Jerry WHITE, Plaintiff,

v.

L. B. SULLIVAN, Commissioner of Alabama Board of Corrections and Walter T. Capps, Warden of Holman Prison Unit, et al., Defendants.

Civ. A. No. 7504–73–P.

United States District Court,
S. D. Alabama, S. D.

Dec. 28, 1973.

Jerry White, pro se.

William G. McKnight, Asst. Atty. Gen. of Ala., Montgomery, Ala., Robert G. Kendall, Mobile, Ala., for defendants.

## ORDER

PITTMAN, Chief Judge.

The plaintiff, a prisoner in the Alabama Penal System, filed this complaint against the defendants, L. B. Sullivan, Commissioner of the Alabama Board of Corrections, Walter T. Capps, Warden of the Holman Unit, Atmore Prison Complex, Marion Harding, Warden of the Atmore Prison Farm, Atmore Prison Complex, and J. W. Ross, Correctional Officer, Atmore Prison Complex, pursuant to 42 U.S.C. § 1983. The complaint alleges that some of the prison conditions and services at the Atmore Prison Complex violate the plaintiff's right to be free from cruel and unusual punishment.

The court has jurisdiction over the complaint pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The plaintiff is an indigent, and therefore, he was allowed to proceed *in forma pauperis*, under the authority of 28 U.S.C. § 1915. The court held a hearing at which the plaintiff testified and presented witnesses. The plaintiff's witnesses were subpoenaed by, and their necessary expenses paid by the government pursuant to 28 U.S.C. § 1915(c).

The plaintiff alleged that his right to be free from cruel and unusual punishment was violated in that:

1. He was denied adequate medical care.

2. He was denied adequate food.

3. He was forced to sleep on a disease infested mattress.

4. He was not given clean linen.

5. He was forced to sleep in an overcrowded area where the toilets and sinks were out of order.

6. ·He was forced to work for slave wages, and therefore, he was unable to buy items necessary for physical hygiene.

7. He was forced to sleep in cells that were unheated in the winter time.

8. He was forced to shower in cold water.

9. He was denied any rehabilitation programs, and

10. He was denied access to a law library.

The plaintiff testified that on several occasions he was placed in punitive isolation instead of receiving medical attention when he returned from a work assignment complaining of illness or back pains. The plaintiff also testified that on one occasion he was assigned to light duty by the prison doctor, but defendant, J. W. Ross, Captain of the Guards at Atmore, insisted that he return to regular duty work.

Luke Burke, a witness for the plaintiff, testified that he is the head steward at the Atmore Prison Farm Infirmary. As an inmate at Atmore presently serving a 5 year, 10 month sentence for burglary, he is assigned to assist the medical staff at Atmore. He testified that when an inmate reports for sick call or comes off a work detail complaining of illness or pain, the initial determination of the nature of the illness is made by the medical assistant. If the medical assistant determines that the inmate's complaint is unfounded, he has the authority to request the prison officials to place the prisoner on a disciplinary report for malingering. Burke also testified that the plaintiff reported to sick call frequently and had the reputation of being a malingerer.

The plaintiff's medical record indicates that he was seen frequently by the prison medical staff, and no physiological basis for his complaints could be found. The prison medical records also reflect that on at least one occasion the prison doctor determined that the plaintiff's medical complaints were being used to avoid work, and as a consequence, the doctor recommended disciplinary action. At the hearing of this cause the plaintiff appeared to be in good health with no observable evidence of physical infirmity.

■ The court finds that the plaintiff was not denied adequate medical care. The court recently held that the procedure of placing prisoners on disciplinary report for avoiding work by making fake medical complaints was not unreasonable. Carry v. Capps, Civil Action No. 7168–72–P, Southern District of Alabama, decied on November 30, 1973.

The plaintiff testified that the food was frequently improperly cleaned and served. He stated that the prisoners only received meat once or twice a week, and then it was usually fat. He also stated that on some occasions there was insufficient food for all the prisoners. Warden Harding testified that the prison menus were planned by a nutritionist for the entire prison system. A sampling of the menus was placed in evidence. He stated that these menus were substantially followed except when localized food shortages necessitated some substitution. He also stated that the food cleaning process in the prison was better than that followed by most restaurants.

The court finds that the prisoners receive a soundly planned and adequate diet. In another case, this court made a surprise walk-through inspection of both Holman and Atmore States prisons. At that time the court found the prison diet and method of food service as here complained of adequate. Lake v. Lee, 329 F.Supp. 196 (S.D.Ala.1971).

The plaintiff testified that he was forced to sleep on an old, torn and smelly mattress. Warden Harding testified that a mattress is issued to each prisoner when he enters the prison, and that it is replaced when it is worn out or torn up. Commissioner Sullivan testified that the prison mattresses are manufactured in a prison factory and that approximately one-fourth of the mattresses were replaced each year. The rate of replacement is accelerated by the destructiveness of the inmates.

The court finds that the plaintiff was not denied an adequate mattress, the prison procedure in this regard is not unreasonable or an abuse of discretion, nor does it reach constitutional proportions.

The plaintiff tetified that he was only issued clean linen every three or four weeks. Warden Harding testified that each prisoner's linen was changed and cleaned once a week, and that any prisoner except those in segregation or punitive isolation could have his linen exchanged at any time.

The court finds that the prison policy and practice in this regard is reasonable and that the plaintiff was not denied clean linen.

The plaintiff testified that he was incarcerated in a dormitory containing 280 or 300 people. He also testified that many of the sinks and toilets were out of order. Warden Harding testified that Atmore was built to house 800–900 people and has a present population of 1107. He also testified that some of the toilets were inoperative because the prison plumbing system was being renovated. He also stated that some of the segregation cells were without sinks or toilets because they were torn out by the inmates. He testified that plumbing had been ordered, but had not been received by the prison system.

Since the hearing, the court has been informed by L. B. Sullivan, Commissioner of the Board of Corrections, that all the cells in the Segregation Unit have been equipped with commodes and lavatories.

The prisoners receive $1.00 every three weeks or $17.30 a year from a prison fund supported by prison store sales. They are issued razor blades and soap. They are not issued toothpaste, toothbrushes or razors. These items must be purchased from the prison store. A year's supply of these items costs approximately $6.60 at the prison store.

The court finds that the amount of compensation, if any, paid to prisoners is within the discretion of the prison administration. In the instant case, the prisoners receive sufficient funds to purchase the above items necessary for personal hygiene.

The cells are heated with steam pipes which run under the floor. While the circulation in some areas is uneven, Lake v. Lee, *supra,* the heating is adequate to maintain the cells at an acceptable level.

The prisoners in general population are allowed to shower every day, those in segregation and punitive isolation once a week, and the hot water supply is normally adequate. Due to mechanical problems in the hot water system, there was no hot water for approximately two weeks in August or September, 1973, warm and hot weather months at the prison. This condition was corrected as soon as possible.

At the Holman Unit the only rehabilitation program is an adult basic education program conducted by the State Department of Education. At the Atmore Unit the State conducts an adult basic education program, and four vocational educational programs including welding, front-end alignment, shoe repair, and building construction. This condition does not rise to a constitutional level.

The libraries at both institutions are open on a regular basis and available to prisoners in general population; however, neither contains any law books except incomplete copies of the Alabama Code.

Although petitioner's complaint did not allege or ask for relief concerning some cells in the segregation unit not having beds but only elevated concrete slabs, it developed during the taking of the evidence that this was true. This condition came about as a security measure to prevent beds being taken apart and used as weapons. This condition was thoroughly discussed in the presence of the petitioner. The defendants agreed to place beds in all these cells where persons are incarcerated. This has been done.

## CONCLUSIONS OF LAW

■ In the instant case the majority of the plaintiff's allegations concern conditions which are within the prison officials' discretion in their management of the internal affairs of the prison. Unless these conditions rise to the level of cruel and unusual punishment the federal courts will not interfere with the internal management of the prison. Novak v. Beto, 453 F.2d 661 (5th Cir. 1972); Royal v. Clark, 447 F.2d 501 (5th Cir. 1971); Krist v. Smith, 439 F.2d 146 (5th Cir. 1971).

Thus, the Fifth Circuit in Novak v. Beto, supra, said:

> The scope of our review is very limited under the cruel and unusual punishment clause. And there are good reasons for the limitations on the scope of that review. In the first place we simply are not qualified to answer the many difficult medical, psychological, sociological, and correctional questions when its comes to choosing between one form of treatment and another. It is for this reason, we think, that courts have traditionally confined their review of prison regulations to such standards as "barbarous" and "shocking to the conscience."

Id. 453 F.2d at 670–671.

In the area of medical care afforded to inmates, the prison medical authorities have broad discretion. Haskew v. Wainwright, 429 F.2d 525 (5th Cir. 1970); Roy v. Wainwright, 418 F.2d 231 (5th Cir. 1969). In the instant case not only has the plaintiff not shown conduct which is "barbarous" or "shocks the conscience," the court has found that the plaintiff has received extensive treatment for his complained of injuries and illnesses. Flint v. Wainwright, 433 F.2d 961 (5th Cir. 1970); Granville v. Hunt, 411 F.2d 9 (5th Cir. 1969); Church v. Hegstrom, 416 F.2d 449 (2nd Cir. 1969).

■■ The evidence falls far short of convincing this court by a preponderance of the evidence that the conditions alleged in paragraphs 2, 3, 4, 6, 7, 8, or 9 actually exist. With reference to that portion of paragraph 5, "He was forced to sleep in an overcrowded area", this exists to the extent indicated on page 5. This condition is not desirable but neither the facts in support of this or the other contentions exist to the point that they "shock the conscience," or can be considered "barbarous."

■ The few volumes of the Alabama Code in the library does not constitute a sufficient legal library.

> "Access to the courts," . . . encompasses all the means a defendant or petitioner might require to get a fair hearing from the judiciary on all charges brought against him or grievances alleged by him.
>
> [A] very clearly defined right to . . . the courts is seriously infringed by the highly restricted nature of the book list set forth. . . .

Gilmore v. Lynch, 319 F.Supp. 105, 110–111 (3 Judge Panel, N.D.Cal.1970). Affirmed Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). Hooks v. Wainwright, 457 F.2d 502 (5th Cir. 1972).

■ It is clear that the state penitentiary must provide reasonable legal library facilities to its inmates, or legal aid or services, so that he may have full "access to the courts."

The court requested counsel for the defendants to submit a proposed law library for the Holman and Atmore Units. The defendants propose to establish law libraries at the Atmore Prison Farm and the Holman Unit containing not less than the following:

United States Code

Code of Alabama, Recompiled, 1958

Alabama Reporter, Volumes 270—current

Alabama Appellate Reporter, Volumes 45—current

Supreme Court Reporter, Volumes 76—current

Federal Reporter, Second Series, Volumes 275—current

Federal Rules of Civil and Appellate Procedure—Latest edition

Federal Rules of Criminal and Appellate Procedure—Latest edition

Alabama Rules of Civil Procedure, 1973

Law Dictionary, Black's or Ballentine's

Harvard Law Review Habeas Corpus.

A recognized Form Book

The foregoing are to be maintained on a current basis.

This proposal is approved.

It is therefore ordered, adjudged and decreed that within a reasonable period of time, and not more than ninety (90) days, these libraries be established at each institution. The defendants are to report to the court every thirty (30) days hereafter on the progress made in the establishment of these libraries.

It is further ordered, adjudged and decreed that the inmates have reasonable access to the library facilities at their institution.

Costs are taxed against the defendant L. B. Sullivan as Commissioner of the Alabama Board of Corrections.