James MORROW, Plaintiff-Appellant,

v.

Robert IGLEBURGER et al.,
Defendants-Appellees.

No. 76–1746.

United States Court of Appeals,
Sixth Circuit.

Argued April 12, 1978.

Decided Sept. 7, 1978.

James Morrow, in pro. per., A. P. Anninos, Cincinnati, Ohio, for plaintiff-appellant.

James W. Drake, City Atty., H. Donald Hawkins, Asst. City Atty., City of Dayton, Law Dept., Lee C. Falke, Pros. Atty., Robert J. Surdyk, Francis S. McDaniel, Dayton, Ohio, William J. Brown, Atty. Gen., James M. Caulfield, Asst. Atty. Gen., Columbus, Ohio, John C. Stamatakos, Dayton, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and KEITH and MERRITT, Circuit Judges.

KEITH, Circuit Judge.

Appellant brought suit against a multitude of officials of the City of Dayton, Montgomery ·County, and the State of Ohio [1] to recover damages for a denial of his

---

1. The district court's order set out the claims and parties in an orderly fashion: See Appendix at 6–7.

(1) Plaintiff alleges that Bernard Keiter violated his civil rights by

(a) failing to serve a copy of an indictment upon him;

(b) assaulting plaintiff either directly or by his duly constituted deputies;

(c) denying plaintiff medical treatment;

(d) placing defendant in isolation in the Montgomery County, Ohio, jail;

(e) conspiring with municipal defendants to serve a forgery indictment upon defendant Sigrest outside of the State of Ohio;

(f) conspiring with defendant Severance to arrest plaintiff illegally on December 8, 1968;

(g) conspiring with defendant Severance to assist in harboring defendant Sigrest;

(h) conspiring with defendants Hall and Falke on January 6, 1969, to arrest him without serving a copy of the indictment;

(i) conspiring with defendant Cardwell to illegally transport plaintiff from Ohio State Penitentiary to the Montgomery County jail;

(j) permitting eavesdropping devices to .remain in the Montgomery County jail;

(k) conspiring with defendant Hoover to falsify the return and the endorsement thereof of defendant Sigrest's indictment.

(2) Plaintiff alleges that State defendants violated his civil rights by

(a) denying him legal assistance in perfecting an appeal from conviction;

(b) placing him in isolation on or about May 5, 1971;

(c) holding a hearing at which no evidence against him was presented;

(d) taking legal material from his cell in Lebanon Correctional Institution;

(e) denying him access to the Law Libraries of the Ohio State Penitentiary and the London Correctional Institution;

(f) permitting Montgomery County authorities to return plaintiff to Montgomery County without legal authority;

(g) refusing to see plaintiff's father-in-law;

(h) intercepting mail sent by plaintiff's wife;

(i) denying plaintiff access to notary service.

(3) Plaintiff alleges that Municipal defendants Igleburger, Hill, Severance and Florkey violated his civil rights by

(a) arresting him without probable cause;

(b) subjecting him to illegal or improper questioning;

(c) denying him counsel before arraignment;

(d) unreasonably delaying the filing of charges and arraignment;

(e) illegally wiretapping his phone calls;

(f) suppressing evidence favorable to his case;

(g) discriminatorily favoring plaintiff's co-defendant;

(h) creating a disturbance in the presence of the jury during plaintiff's trial;

(i) rearresting plaintiff without warrant, accusation or indictment;

(j) arbitrarily arresting plaintiff on May 15, 1970;

(k) the forming of a conspiracy by defendants Casey, Reeder and Black to steal legal documents from plaintiff and to subject plaintiff to a beating;

(l) forming a conspiracy by defendants Baker and Falke to deny plaintiff legal assistance;

civil rights. He proceeded pro se and in forma pauperis before the district court. The suit followed appellant's arrest and subsequent conviction in 1969 for forgery for which he was sentenced and served three years in prison. The conviction was reversed by the state appellate court, and appellant was released from prison in 1972.[2]

Judge Rubin, the district court judge, entered judgment against three city defendants and awarded damages in the amount of $1,000.00 upon a finding that these defendants violated appellant's civil rights by failing to charge and arraign him within a reasonable time. The district court also found that there was insufficient evidence of violation of appellant's civil rights on all other counts. On appeal appellant raises three issues: whether the award of damages was adequate, whether the district court erred in finding that the evidence did not establish by a preponderance of the evidence a denial of civil rights by the dismissed defendants, and whether the district court erred in failing to compel the appearance of witnesses subpoenaed by appellant. We affirm the judgment of the district court.

Appellant was arrested on Saturday, September 7, 1968, in the afternoon. The next regularly scheduled arraignment was on Monday, September 9. Appellant's co-defendant was arraigned on Monday after giving a statement which implicated appellant, but appellant was not arraigned until Tuesday, September 10, 1968.

█ Appellant argues that he was entitled to additional compensatory damages and/or punitive damages upon the district court's finding that defendants Igleburger, Severance, and Hill deprived him of his civil rights by keeping him incarcerated for an unreasonable time before arraignment. The purpose of damage for deprivation of civil rights is to compensate persons for injuries caused by the deprivation. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Once a violation of civil rights is found, a plaintiff may recover for out-of-pocket expenses and emotional distress, but there must be sufficient evidence to support such a finding.[3] *Carey v. Piphus*, 435 U.S. at 262, 98 S.Ct. 1042; *Glasson v. Louisville*, 518 F.2d 899 (6th Cir: 1975); *Donovan v. Reinbold*, 433 F.2d 738 (9th Cir. 1970). While punitive damages also may be awarded in appropriate cases to deter the deprivation of constitutional rights, the district court made no specific finding that defendants acted with malicious intent to deprive appellant of his constitutional rights, and no such malice will be presumed. *Carey v. Piphus*, 435 U.S. at 255, and n. 11, 98 S.Ct. 1042; *McDaniel v. Carroll*, 457 F.2d 968 (6th Cir. 1972), *cert. denied* 409 U.S. 1106, 93 S.Ct. 897, 34 L.Ed.2d 687 (1973). We find, therefore, that the court did not err in its assessment of damages in this case.

█ With respect to appellant's claim that the district court erred in finding that there was insufficient evidence presented to establish by a preponderance of the evidence any of appellant's other claims, see note 1, *supra*, we have reviewed the record in this case in its entirety. The transcript consists of some 400 pages of testimony which the district court heard without a jury. As trier of fact, the district court weighed and evaluated the evidence presented and the credibility of the witnesses. We conclude that the district court's findings were not clearly erroneous.

█ Appellant also complains that the district court erred in failing to order the appearance of witnesses allegedly subpoenaed by appellants. We note first that very

---

(m) forming a conspiracy by defendant Baker and defendant Falke to deny plaintiff access to the courts.

2. No further prosecution had been made.

3. While the district court's award of damages did not specify whether the damages awarded

were based upon the proofs as to out-of-pocket compensation or emotional distress or both, the more reasonable explanation of the award was that it was rendered for both since the proofs did not support a finding which would justify $1,000.00 in damages solely for out-of-pocket expenses.

early in the proceedings Judge Rubin recognized the difficulty of appellant's task as a pro se litigant and rendered to him all reasonable assistance throughout the three-day trial.[4] *See e. g.*, Transcript at 3–4.

The district court excused the appearance of Judge Edwards, a former municipal court judge, on the reasonable grounds that Judge Edwards was blind and in very poor health. The court also quashed the subpoena of Harold Cardwell on the ground that he resided more than 100 miles from the court. Rules 4(f), 45(e)(1), Fed.R.Civ.Pro. Appellant did not object below to these rulings by the court, nor does he specifically refer to these rulings on appeal. We proceed, therefore, on the assumption that appellant does not claim error here.

Apparently, however, appellant subpoenaed other witnesses who failed to appear. On appeal, he claims it was error for the district court to refuse to order their presence on the ground that these witnesses had not been tendered their witness fees and mileage. As an in forma pauperis plaintiff, he argues, no fees were required pursuant to 28 U.S.C. § 1915(c). Our review of the record discloses no such specific ruling by the district court. The following interchange occurred during trial to which plaintiff specifically points:

THE COURT: Mr. Morrow, you may call your next witness.

MR. MORROW: Your Honor, may I say something?

THE COURT: Surely.

MR. MORROW: I have subpoenaed numerous witnesses, and the ones I had listed and had my case planned for were listed for today, and a lot of them haven't shown up, and this has thrown a monkey wrench in my plans, and I have talked to the marshals, and they have been served and it is really impeding my progress.

THE COURT: Mr. Morrow, I don't know what the Court can do about that. If there is evidence of a willful disobedience of subpoena, that is one thing, but I am sure you are aware of the fact that a witness is entitled at the time of service of the subpoena to his witness fee and mileage, and that he need not appear if he does not receive that.

Now, I am not ruling upon any of your witnesses as to whether that was the situation or not, but I can only respond by saying I will expect you to proceed with your case at this point.

MR. MORROW: All right, your Honor, but I would think if a witness couldn't make it because of that, that he would contact the marshal or the Court and tell them why.

THE COURT: There may be a dozen reasons, Mr. Morrow. I do point out that one witness, Judge Edwards, spoke to the Court and the Court excused him, but beyond that I have no knowledge whatsoever as to any of your witnesses.

MR. MORROW: Is it in the Court's power to order these people here who have been duly served?

THE COURT: If there is a willful violation of a subpoena, yes, but I point out to you again they are not required to attend unless they are tendered their witness fee and mileage.

Now, if there are circumstances under which that becomes applicable, then the only response I can give to you is I will

---

4. Additionally, at the conclusion of the trial, the court made the following comments:

THE COURT: All right. This will be submitted and the Court will render an opinion. I should state for the record, however, Mr. Morrow, I am impressed with the manner in which you conducted yourself. I have seen lawyers in this courtroom that did not do as well.

MR. MORROW: Thank you, your Honor.

THE COURT: One of the concerns that there always is is that we lawyers and judges may be establishing such a complicated procedure that ordinary citizens really don't have access to the courts, and the fact that you are untrained in the law and you were able to present a coherent case and to interrogate witnesses satisfies me at this point at least that we haven't yet reached the point where ordinary citizens don't have access to the courts. You did very well.

MR. MORROW: Thank you.

THE COURT: Gentlemen, thank you for you assistance. We will stand in recess at this time. Transcript at 415–16.

not order them to appear unless that is done in advance.

MR. MORROW: Well, I would like to certify if that is the reason and maybe I can tender the money.

THE COURT: You have no further witnesses on this issue?

MR. MORROW: Oh, yes, I do.

THE COURT: Why don't you proceed with your witnesses?

MR. MORROW: All right. I would like to call Robert Skinner.

Transcript at 102–04.

As we read the above, the court did not rule on the status of appellant's witnesses.

Section 1915(c) of Title 28 provides:

The officers of the court shall issue and serve all process, and perform all duties in such cases. *Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.* (Emphasis Added)

Pursuant to Rule 45(c), Fed.R.Civ.Pro.,

**(c) Service.** A subpoena may be served by the marshal, by his deputy, or by any other person who is not a party and is not less than 18 years of age. *Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and by tendering to him the fees for one day's attendance and the mileage allowed by law.* When the subpoena is issued on behalf of the United States or an officer or agency thereof, fees and mileage need not be tendered. (Emphasis Added) [5]

As noted above appellant specifically agreed to make inquiry as to why his witnesses failed to appear.[6] Although the

5. *See also* 28 U.S.C. § 1821 (Supp.1978) which provides:

**Per diem and mileage generally; subsistence**

A witness attending in any court of the United States, or before a United States commissioner, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall receive $20 for each day's attendance and for the time necessarily occupied in going to and returning from the same, and 10 cents per mile for going from and returning to his place of residence. Regardless of the mode of travel employed by the witness, computation of mileage under this section shall be made on the basis of a uniform table of distances adopted by the Attorney General. Witnesses who are not salaried employees of the Government and who are not in custody and who attend at points so far removed from their respective residence as to prohibit return thereto from day to day shall be entitled to an additional allowance of $16 per day for expenses of subsistence including the time necessarily occupied in going to and returning from the place of attendance: *Provided,* That in lieu of the mileage allowance provided for herein, witnesses who are required to travel between the Territories and possessions, or to and from the continental United States, shall be entitled to the actual expenses of travel at the lowest first-class rate available at the time of reservation for passage, by means of transportation employed: *Provided further,* That this section shall not apply to Alaska.

When a witness is detained in prison for want of security for his appearance, he shall be entitled, in addition to his subsistence, to a compensation of $1 per day.

Witnesses in the district courts for the districts of Canal Zone, Guam, and the Virgin Islands shall receive the same fees and allowances provided in this section for witnesses in other district courts of the United States.

6. The following exchanges also appear in the record:

THE COURT: Okay. You may proceed.

MR. MORROW: Would you see if James Sheehan is here?

MR. COY: No, he is not.

MR. MORROW: Your Honor, we are faced again with the problem that the witnesses that had been listed in order to testify to lay the foundation of certain things still haven't arrived.

THE COURT: Do you have any witnesses?

MR. MORROW: Yes, I see a couple out there.

THE COURT: You may proceed.

Transcript at 136–37. We note that the transcript contains two pages numbered 137 and 138. The above cite refers to the first page numbered 137. The cite below refers to the second pages numbered 137 and 138.

You may call your next witness.

MR. MORROW: I would like to look out there and see who is out there, your Honor.

THE COURT: You may, indeed.

MR. MORROW: Your Honor, I am really not prepared to go any further at this time.

THE COURT: Mr. Morrow, the responsibility for producing witnesses is on the litigant and not the Court. If you are not prepared to go further, I am going to rule on your case at this point against the County defendants.

court on a number of occasions explained an offer of proof to appellant, *see e. g.,* Transcript at 27–28, we note that appellant did not make an offer of proof as to the failure of his witnesses to appear. Appellant did not inform the court of the names of the witnesses he claimed to have subpoenaed or show the court that these witnesses were in willful disregard of the subpoenas allegedly issued. Moreover, appellant did not indicate that he was unable to pay the witness fees. Instead, appellant said he would find out why the witnesses did not appear and would attempt to tender the fees if that appeared to be the reason the witnesses were not in attendance. On the record of this case, we find there was no abuse of discretion and, therefore, no error in the manner in which the district court handled this issue.[7] *See Flowers v. Turbine Support Division,* 507 F.2d 1242 (5th Cir. 1975); *Estep v. United States,* 251 F.2d 579 (5th Cir. 1958).

The judgment of the district court is affirmed.

MR. MORROW: Well, in that case I better take testimony from the rest of the defendants.

THE COURT: Feel free. I will allow you to proceed as you see fit.

Transcript at 137–38.

The court made various accommodations for appellant.

Now, there is one other situation. There is a matter that I must consider on Wednesday morning, and we will not convene until approximately 1:00 o'clock or 1:30 on Wednesday. I am aware, Mr. Morrow, that you have issued some subpoenas for witnesses returnable at 9:00 A.M. on Wednesday. If you will give a list of those witnesses to Miss Ellis, I will *see to* it that they are called and told that they need not appear until 1:30 on Wednesday so that it will not be necessary for them to sit around.

Transcript at 195.

Mr. Morrow, are you prepared to go forward on your actions against the municipal defendants or are *they subpoenaed for tomorrow?*

MR. MORROW: I have subpoenaed them for tomorrow, your Honor.

THE COURT: All right. My suggestion, then, is that we wait until tomorrow and you may proceed as to the municipal defendants at that time.

Gentlemen, may I point out and may I remind you that unfortunately I have certain commitments tomorrow morning, and we will commence hearing the matter against the municipal defendants at 1:30 in the afternoon.

Did you wish to be heard, Mr. Hawkins?

MR. HAWKINS: In the interest of expediting the case, three of the four municipal defendants are seated in the courtroom.

THE COURT: We are all taxpayers, and we don't want them to spend time here unnecessarily.

MR. HAWKINS: And we have the records that have been subpoenaed from the Chief of Police also present, so that so far as I know, *anything Mr. Morrow could legitimately ask* for is available.

THE COURT: Mr. Morrow, is there any reason why you should not proceed with that evidence and those witnesses?

MR. MORROW: Yes, your Honor. I didn't come with things related to them.

THE COURT: I will extend to you that privilege. I had indicated to counsel that this would be done on a three-day basis, and we will accordingly adjourn at this time, and I do remind you gentlemen we will convene at 1:30 tomorrow afternoon.

Transcript at 324–26.

7. We think that it is within the sound discretion of the district court to order the payment of witness fees as well as other normal costs, out of government funds under Section 1915 where the court has made an initial determination that the litigant is without funds in its grant of in forma pauperis status, and upon the further showing that the witness is necessary for the full presentation of the litigant's case. Appellant here failed to meet this burden.