**Willard E. JOHNSON,
Plaintiff-Appellant,**

v.

**Ronald HUBBARD, Lewis Lindner, Kahlil Matouk, Defendants-Appellees.**

**No. 81–3249.**

United States Court of Appeals,
Sixth Circuit.

Argued May 27, 1982.

Decided Jan. 26, 1983.

Rehearing and Rehearing En Banc
Denied April 20, 1983.

Willard E. Johnson, pro se on the brief.

Robert E. Fleming, Louisville, Ky. (Court-appointed) (argued), for plaintiff-appellant.

Michael L. Cioffi, Mike Noonan, Asst. Attys. Gen., Columbus, Ohio, for defendants-appellees.

Before KENNEDY, Circuit Judge, and SWYGERT* and PECK, Senior Circuit Judges.

JOHN W. PECK, Senior Circuit Judge.

On July 7, 1975 Willard Johnson was committed to Lima State Hospital (LSH) after being convicted as a psychopathic offender. Three years later, the Ohio legislature enacted a new law requiring all individuals so committed to mental institutions to be reexamined. Ohio Rev.Code §§ 5122.11; 5122.-15. The purpose of such reexamination is to determine whether continued mental care is needed.

---

* The Honorable Luther M. Swygert, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

In August, 1980, despite preliminary indications that his psychiatrists thought he needed additional medical treatment, Johnson was found no longer to require treatment and the Ohio probate court ordered Johnson transferred to the Ohio Department of Rehabilitation and Corrections (DRAC). Both of Johnson's psychiatrists affirmatively testified in support of the transfer.

Johnson filed a civil rights action in forma pauperis against his two psychiatrists, Dr. Lewis Lindner and Dr. Kahlil Matouk. He claimed that they had changed their testimony as a means of retaliating against him for exercising his constitutional rights. He also filed a civil rights suit against Ronald Hubbard, the director of LSH, alleging that Hubbard had knowledge of the acts of Lindner and Matouk and was directly and indirectly involved in their actions.

Before the hearing on the preliminary injunction was scheduled to begin, Johnson submitted a letter to the court indicating that he wished to subpoena some twelve witnesses, but that he was unable to pay their transportation costs and other fees specified by law. Johnson requested that the court pay such fees for him. In response the court informed Johnson that it had no source of money from which to pay such fees and knew of no way to satisfy his request.

On the day of the hearing only one of Johnson's witnesses appeared. After Johnson had again informed the court that he was unable to pay the fees to his witnesses, the district judge dismissed the case for lack of prosecution. Johnson appeals that decision, arguing that by dismissing his claim the district court denied him access to the court to prosecute his case and that under 28 U.S.C. § 1915 the court had an obligation to pay the witness fees. Johnson also argues the district court abused its discretion by not allowing him an opportunity to present his evidence in an alternative manner. We agree with the district court that no constitutional violation occurred in this case and that no basis exists for providing funds under § 1915.

## ACCESS TO THE COURTS

■ Initially, appellant Johnson argues his constitutional right of "access to the courts" was violated when the district court refused to pay his witness fees. If the court refuses to assist him by paying his witness fees, he contends this right of access is abridged. We disagree.

In *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) the Supreme Court developed the concept of "access to the courts." In that case, the Court was faced with the question of whether denying an indigent plaintiff access to the court for dissolution of her marriage because she could not pay a filing fee was a violation of her fourteenth amendment rights. The Court held that where inability to pay fees totally denied an individual a right of access to the only avenue available for the exercise of her rights, such a fee had to be waived by the court. *Id.* at 380, 91 S.Ct. at 787.

In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) the Court further clarified the meaning of "right of access" to the courts. In *Bounds,* where a prisoner was denied adequate legal assistance or the use of a law library, the right was violated. *Id.* at 822–23, 97 S.Ct. at 1495. Justice Marshall stated that "meaningful access" included the right to adequately prepare one's case for adjudication. *Id.* at 823–24, 97 S.Ct. at 1495–1496. Lower federal courts have further developed this right by requiring prisons and other institutions to allow inmates access to nearby law libraries and requiring that potential prisoner litigants be given legal assistance and reasonable access to legal information. *See Rhodes v. Robinson,* 612 F.2d 766, 771 (3d Cir.1979) (adequacy of library or legal assistance key factor); *Battle v. Anderson,* 614 F.2d 251, 255 (10th Cir.1980).

■ In clarifying the "right of access" the courts have developed a distinction between actual access to the court and procedures essential to the trial process. While

allowing potential plaintiffs and defendants access to law libraries and other legal assistance, or the waiver of certain pretrial fees, there is no constitutional requirement to waive costs of transcripts, expert witness fees, and fees to secure depositions. *See Moss v. Thomas,* 299 F.2d 729 (6th Cir.1962); *Doe v. Schneider,* 443 F.Supp. 780 (D.Kan. 1978) (right of access to courts does not encompass right of access to information to substantiate claim). *See generally,* 20 A.L. R.Fed. 274 (1974) (basis for waiver of certain fees or costs statutory under 28 U.S.C. § 1915 rather than constitutionally required).[1] Only where such fees may be waived by statute can a party seek such a waiver. *See* 28 U.S.C. § 1915(a).

In this case, Johnson requested that the court pay his witness fees, arguing that if they did not, his right of access to the courts would be denied. Unlike *Boddie, supra,* Johnson was declared indigent and the filing fees and other preliminary court charges were waived. Further, unlike *Bounds, supra,* Johnson was able to develop and prepare his case. Johnson insists that the right of access should go one step further and also encompass witness fees to ensure that he can present his case completely to the court. We hold that the right of access does not extend that far.

1. Justice Marshall in *Bounds* does indicate in dicta that the "right of access" to be "meaningful" might include more than pure access to the courts but the opinion in *Bounds* was only a plurality decision of four. *See* 430 U.S. 817, 824–25, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977). Justice Powell while agreeing in the holding of the case, clearly indicates that he would not go as far as Justice Marshall. He would continue the sub silentio distinction between pure access questions and other matters. *Id.* at 833, 97 S.Ct. at 1500 (Powell, J., concurring) (right of access to courts does not require a civil rights action be heard in court or that trial records be freely available on review). *Cf. United States v. MacCollom,* 426 U.S. 317, 319, 96 S.Ct. 2086, 2088, 48 L.Ed.2d 666 (1976) (Rehnquist, J., plurality) (due process does not require free transcript on appeal for indigent plaintiff in habeas corpus action).

2. Johnson, in the alternative, argues that he has a fundamental right to bring a civil rights action in court under 42 U.S.C. § 1983, and that the court denied or infringed this right by

Initially, while a party under certain circumstances is granted the right of access to the courts, we do not feel that such a right requires a court to grant every party a perfect trial in all aspects. Witness fees clearly fall in the category of items such as trial transcripts, depositions, and other documents, which the constitution does not require a court, or in practical terms, the federal government, to pay for at the request of the indigent party. Johnson is not barred from access to the courts simply because the court will not or cannot pay for all his witnesses to appear. Johnson has numerous alternative methods to proceed with his case.

In sum, therefore, we hold that right of access does not encompass a requirement that a court pay a party's witness fees absent a statutory authorization.[2]

### STATUTORY BASIS

Appellant Johnson's second contention is that 28 U.S.C. § 1915 requires that the court pay a plaintiff in a civil rights action a plaintiff's reasonable witness fees when that plaintiff is declared indigent and unable to pay such costs. Again, we disagree.

Section 1915 is a statutory scheme by which courts may waive certain court fees where a party is declared an indigent. Sec-

not paying for the attendance of his witnesses. We disagree. Even if we were willing to declare such a right existed, which we see no reason at this time to do, the courts have held that such a right is not absolute. *See Roe v. Wade,* 410 U.S. 113, 155–56, 93 S.Ct. 705, 727–728, 35 L.Ed.2d 147 (1973). Such fundamental rights may be infringed by legitimate state regulations. Further, the state is not required to subsidize or insure that the right be fully and perfectly exercisable. *Harris v. McRae,* 448 U.S. 297, 316, 100 S.Ct. 2671, 2687, 65 L.Ed.2d 784 (1980). (The financial constraints that restrict an indigent woman's ability to enjoy the full range of constitutionally protected freedom of choice are the product not of governmental restrictions on access to abortions, but rather of her indigency). Here, Johnson was able to bring his action in federal court, and present his issues to the court. The fact that the state was unwilling or unable to assist him by subsidizing the payment of his witness fees did not totally bar his efforts to bring the case.

tion 1915(c) in particular allows the court to waive certain preliminary court fees whenever a party is declared indigent. It provides: "(c) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases." 28 U.S.C. § 1915(c). We do not think the language of § 1915(c) can support such a reading.

Section 1915(c) must be read in conjunction with its criminal law counterpart, § 1825.[3] Section 1825 was passed in 1965 in response to a judicial holding which had allowed for the payment of witness fees in criminal cases where the defendant was indigent. *Estep v. United States,* 251 F.2d 579, 582 (5th Cir.1958). *See also, Dortly v. Bailey,* 431 F.Supp. 247, 248–50 (M.D.Fla. 1977) (outlines history of § 1825). At the same time, however, Congress failed to change § 1915 to allow for payment of such witness fees in civil cases. We feel this failure is controlling in this case. *See Decisions of the Comptroller General,* 53 Comp. Gen. 645.

■ At all times, a court must carefully scrutinize legislation to follow the spirit and meaning of each congressional enactment. Nonetheless, it must remember the proper province of the judiciary is to interpret the laws, not to create them. This concept is especially important where the construction involves the doctrine of sovereign immuni-

ty. *See United States v. MacCollom,* 426 U.S. 317, 321, 96 S.Ct. 2086, 2089, 48 L.Ed.2d 666 (1976) (where a case involves sovereign immunity and whether the Congress has provided for federal liability, the statute under question must be carefully construed). *See United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941). In this case, absent a clearly expressed grant of congressional waiver of sovereign immunity, we are constrained to hold no such waiver was given.[4]

## ABUSE OF DISCRETION

Johnson's final contention is that the district judge's dismissal of the suit immediately after Johnson's failure to produce a number of his witnesses was an abuse of discretion. Since other avenues for procuring funds were available, the judge should have given Johnson, he contends, more time to solve the problem of lack of funds.

■ This court recognizes the tremendous difficulties facing a district judge. Facing crowded dockets, it is quite understandable that a district judge would want to quickly and efficiently deal with the judicial business at hand. Certainly, however, a district judge must be flexible in allowing a plaintiff an adequate opportunity to present his evidence in such a manner as to minimize the cost of so doing, while ensuring that justice be done in a particular case. An outright dismissal should be a last resort. *Boazman v. Economics Laboratory,*

3. 28 U.S.C. § 1825 reads in pertinent part:
In any case wherein the United States or an officer or agency thereof, is a party, the United States marshal for the district shall pay all fees of witnesses on the certificate of the United States Attorney or Assistant United States Attorney, and in the proceedings before a United States Commissioner [magistrate], on the certificate of such Commissioner [magistrate].
In all proceedings, in forma pauperis, for a writ of habeas corpus or in proceedings under section 2255 of this title [28 USCS § 2255], the United States marshal for the district shall pay all fees of witnesses for the party authorized to proceed in forma pauperis, on the certificate of the district judge. Fees and mileage need not be tendered to the witness upon service of a subpena issued in behalf of the United States or an officer or

agency thereof, or upon service of a subpena issued on behalf of a party, authorized to proceed in forma pauperis, where the payment thereof is to be made by the United States marshal as authorized in this section.

4. Johnson argues that this circuit in *Morrow v. Igleburger,* 584 F.2d 767, 772 n. 7 (6th Cir.), *cert. denied,* 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78 (1979), indicated a willingness to allow a court discretion to pay such fees. The footnote statement, however, was only dicta, since no finding of indigence had been made. While several other courts have granted such fees, no court has presented any thorough research of the point. *See White v. Sullivan,* 368 F.Supp. 292 (S.D.Ala.1973) (court in outline of facts mentioned waiver of such fees with no discussion of point).

537 F.2d 210, 212 (5th Cir.1976) (use of dismissal harsh sanction and generally used only when evidence of delay or contumacious conduct by person is shown).

Even though there is no evidence of delay here, the trial judge had no real option but to dismiss the case for lack of prosecution. The three defendants in the case had appeared, and testimony already was being taken from Dr. Lindner. If one of the defendants had not shown up at the hearing, Johnson could have gotten evidence from them via Rule 33 interrogatories, but each of the defendants had appeared in court. *See* Rule 33, Fed.R.Civ. Pro. (1980). Finally it is highly unlikely that Johnson, already declared indigent, would produce funds in the reasonable future to pay such witness fees. Overall the trial judge had no real option but to dismiss the case when Johnson could not produce the evidence necessary to continue.[5]

We are acutely aware of the fact that the result in this case produces an unhappy situation where a plaintiff, declared indigent, has the rather hollow right of bringing his § 1983 action in district court, then is dismissed from that court when he is unable to pay to have his witnesses appear to present evidence in support of that claim. While we can find no legal basis to support the requirement to pay such witness fees, it seems apparent that legislative consideration similar to the Congressional action taken in connection with criminal and habeas corpus cases is indicated. It is paradoxical to provide an indigent plaintiff with the right to proceed in court, then deny him a meaningful chance to exercise that right by not providing him assistance in paying routine costs in so exercising that right.

Lacking statutory authority to do otherwise, we affirm.

SWYGERT, Senior Circuit Judge, dissenting.

I respectfully dissent. This court ought not affirm the district court's dismissal of plaintiff's claim for "want of prosecution." His claim was dismissed because he failed to produce the witnesses necessary to prove his case. The plaintiff failed because he was too poor to pay the required fees and travel expenses for his witnesses. Important considerations in this case are that the plaintiff is a state prisoner pursuing a 42 U.S.C. § 1983 (1976) claim and that he was allowed by the district court to file his complaint under the provisions of 28 U.S.C. § 1915 (1976).

I would hold that the plaintiff should have the right to have necessary witnesses appear in court without advance payment of fees and travel expenses, as required by Fed.R.Civ.P. 45(c), under the provisions of 28 U.S.C. § 1915, through statutory construction informed by constitutional considerations.

The constitutional aspect of the question before us is grounded in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). There the Supreme Court reaffirmed its holding in *Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971), and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), that the states must protect prisoners' constitutional right of access to the courts by providing "indigent inmates with access to a reasonably adequate law library for preparation of legal actions." *Bounds, supra,*

---

**5.** Johnson suggests that the court could avoid the problem of witness fees, chargeable against the government by taxing them as costs, payable by the losing side. *See Cagle v. Cox,* 87 F.R.D. 467, 470 (E.D.Va.1980) (court with its equitable discretion may award fees in excess of statutory authorization only in the exceptional case where expert's testimony materially important to case and judge was notified ahead of time about the indigent's status). This method of avoiding the problem, however, is not available. Under 28 U.S.C. § 1920(3), the court may tax as costs the fees paid to certain witnesses, within its discretion. This section has been construed on numerous occasions to encompass only expert testimony in a very restricted number of cases. *See Moss v. ITT Cont'l Baking Co.,* 83 F.R.D. 624 (E.D.Va.1979); 6 Moore's Federal Practice ¶ 54.77 5–3, at 1735 (2d ed. 1982). In this case, the procurement of expert testimony is not in issue. Here, only standard lay testimony by witnesses is presumably sought. We see no basis for expanding § 1920(3) beyond its present very limited usage, absent a more direct specification by Congress. Such an expansion would radically alter the meaning and effect of taxing costs in civil cases.

430 U.S. at 829, 97 S.Ct. at 1498 (quoting *Wolff, supra,* 418 U.S. at 578–79, 94 S.Ct. at 2985–2986). The Court stated its holding as follows:

> "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

*Bounds, supra,* 430 U.S. at 828, 97 S.Ct. at 1498 (footnote omitted).

Currently, an inmate in plaintiff's situation may, if the conditions of section 1915 are met, file his complaint without advance payment of filing fees. He must also be provided with adequate library facilities or adequate assistance from prisoners trained in the law. *Bounds, supra.* Moreover, there is a developing line of cases which requires, within the discretion of a district court, appointment of counsel for such claimants. *See McKeever v. Israel,* 689 F.2d 1315 (7th Cir.1982); *Ray v. Robinson,* 640 F.2d 474 (3d Cir.1981); *United States v. McQuade,* 579 F.2d 1180 (9th Cir.1978).

It follows directly from *Bounds* that the constitutional right of access to the courts includes the right to present evidence through necessary witnesses to prove an inmate's case, especially a case arising under section 1983, without advance payment of fees. There can be no question that marshalling and presenting the facts to support a claim are far more important than the availability of law library facilities or the services of counsel. If a plaintiff is unable to present to the trial court the facts underlying his claim, the furnishing of legal services such as a law library or counsel would have no utility. A *pro se* litigant before an understanding judge may be able to present his legal theories with a reasonable degree of proficiency. He is helpless, however, and bound to lose if he cannot produce the evidence which is the basis of his claim. This possibility, I believe, would pose a substantial question of whether the constitutionally required meaningful access to the courts had been provided.*

The purpose of section 1915 is to guarantee our indigent citizens access to the federal courts. Section 1915(a) provides in pertinent part:

> Any court of the United States may authorize the commencement, prosecution or defense of any suit ... without prepayment of fees and costs ... by a citizen who makes affidavit that he is unable to pay such costs ....

Section 1915(c) provides in pertinent part:

> The officers of the court shall issue and serve all process, .... Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

I agree with Judge Marsh in *United States v. Cavell,* 171 F.Supp. 417, 423–24 (W.D.Pa.1959), that section 1915 implicitly authorizes the payment of witness fees and travel costs in cases permitted to be brought under that statute. Reason tells us that section 1915(c) can only mean that witness fees and costs may be waived and that whatever costs involved shall be borne by the United States as part of the operational expenses of its courts. As this appeal so poignantly demonstrates, the same remedies will *not* be available if an indigent person cannot present his witnesses. If this construction of the statute is incorrect, there is no logical meaning which can be given the language of section 1915(c).

Moreover, I am compelled to adopt this construction of section 1915 because of the substantial possibility of constitutional infirmities of a contrary construction. This

---

* It seems anomalous to me that our federal constitution requires the states to provide funds for law libraries for indigent prisoners while that same document does not require the federal government to provide funds for witness fees for indigent prisoners. As I have said, the latter requirement involves a more fundamental aspect of meaningful access to the courts. There is no sound reason why federal judges should show any greater hesitancy to hold the federal government to its constitutional responsibilities than to hold state governments to their constitutional duties. Indeed, there are good reasons in our federalist system to avoid even the appearance of imposing greater burdens upon the states than upon the federal government.

approach is consistent with *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). *Yamasaki* concerns a congressional statute governing Social Security overpayment notice and hearing procedures. The Court said:

A court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering the constitutional question. *New York City Transit Authority v. Beazer,* 440 U.S. 568, 582–583, and n. 22 [99 S.Ct. 1355, 1364, and n. 22, 59 L.Ed.2d 587] (1979); *United States v. CIO,* 335 U.S. 106, 110 [68 S.Ct. 1349, 1351, 92 L.Ed. 1849] (1948); *Ashwander v. TVA,* 297 U.S. 288, 347 [56 S.Ct. 466, 483, 80 L.Ed. 688] (1936) (concurring opinion). Due respect for the coordinate branches of government, as well as a reluctance when conscious of fallibility to speak with our utmost finality, *see Brown v. Allen,* 344 U.S. 443, 540 [73 S.Ct. 397, 427, 97 L.Ed. 469] (1953) (Jackson, J., concurring in result), counsels against unnecessary constitutional adjudication. And if "a construction of the statute is fairly possible by which [a serious doubt of constitutionality] may be avoided," *Crowell v. Benson,* 285 U.S. 22, 62 [52 S.Ct. 285, 296, 76 L.Ed. 598] (1932), a court should adopt that construction. In particular, this Court has been willing to assume a congressional solicitude for fair procedure, absent explicit statutory language to the contrary. *See Greene v. McElroy,* 360 U.S. 474, 507–08 [79 S.Ct. 1400, 1419, 3 L.Ed.2d 1377] (1959).

442 U.S. at 692–93, 99 S.Ct. at 2553. This case is like *Yamasaki* because it too concerns fair procedures, and I think it is at least as appropriate here as it was in *Yamasaki* to assume congressional solicitude for fair procedures.

There is precedent and comment besides *Cavell* that supports my view. In fact, this very court, even though dictum, has said:

We think that it is within the sound discretion of the district court to order the payment of witness fees as well as other normal costs, out of government funds under Section 1915 where the court has made an initial determination that the litigant is without funds in its grant of in forma pauperis status, and upon the further showing that the witness is necessary for the full presentation of the litigant's case. Appellant here failed to meet this burden.

*Morrow v. Ingleburger,* 584 F.2d 767, 772 n. 7 (6th Cir.1978).

Federal administrative consideration of this precise question is also helpful. On February 28, 1974 the Comptroller General issued a decision concerning payment responsibility in *forma pauperis* proceedings. Decisions of the Comptroller General, 53 *Comp.Gen.* 638 (File B–139803). The Comptroller adopted the view advanced by the Administrative Office of the United States Courts in concluding:

[We] are aware of no legal basis which would authorize either the Department [of Justice] or the [Administrative Office] to pay expenses incurred in obtaining counsel or fact or expert witnesses on behalf of an indigent prisoner who is bringing a civil rights action under 42 U.S.C. [§] 1983. Moreover, in view of the broad policy and financial implications of authorizing such payments, we believe that proposals to accomplish the goals of such a program should be considered and authorized, if desired, by Congress.

53 *Comp.Gen.* at 645.

However, in an exchange of letters between the Department of Justice and the Administrative Office preceding the Comptroller's decision, the Department of Justice took a view far different from that adopted by the Comptroller. In the course of a letter dated September 21, 1973, addressed to the Comptroller, the Acting Assistant Attorney General for Administration, Glen E. Pommerening wrote:

It is the position of the department that, in the interest of justice, civil rights petitioners proceeding under 42 U.S.C. § 1983 in *forma pauperis* should be provided, at the discretion of the court, with counsel and those fees and expenses currently allowed by law to indigents in criminal actions. Such a ruling by the Comptroller General would ... enable counsel appointed by the court to reimbursement,

and the payment of other expenses. Lack of funds for certain expenses, e.g., to depose a witness, may effectively preclude an indigent from asserting his rights under the Civil Rights Act.

*Comp.Gen.* File B–139703. I believe that the position of the Assistant Attorney General is correct, that, in the interests of justice, indigent civil rights petitioners, pursuant to section 1915, should be provided witness fees.

A cautionary note is, however, appropriate. A court ought to have discretion, as section 1915 itself admonishes, to allow witnesses to be presented without cost to the petitioner only in meritorious cases and after a preliminary and fair showing of materiality and necessity. Further, the trial court should consider whether a witness' testimony may as effectively be presented by deposition or interrogatories as by personal appearance in court.