762 F.2d 1006
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
STANLEY BARHAM CLARK, PETITIONER-APPELLEE,
v.
JIMMY C. ROSE, WARDEN, RESPONDENT-APPELLANT.
 NO. 84-5744
 United States Court of Appeals, Sixth Circuit.
 4/1/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
 BEFORE: KENNEDY and WELLFORD, Circuit Judges; and PHILLIPS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Stanley Barham Clark, petitioner, was convicted in Tennessee state court of one count of first degree murder and one count of second degree murder. He was sentenced to life imprisonment in the state penitentiary for terms of life and ten years, respectively. Following his conviction, petitioner appealed to the Tennessee Court of Criminal Appeals. That court affirmed his conviction, and subsequently the Tennessee Supreme Court denied petitioner permission to appeal. Petitioner has instituted the present action, claiming that the trial court violated his fourteenth amendment right to due process by shifting to him the burden of disproving an element of his asserted offense under Sandstrom v. Montana, 442 U.S. 510 (1979). The district court agreed with petitioner and granted the writ of habeas corpus requested. The State of Tennessee now appeals.
 
 
 2
 In December of 1978, Charles Browning and Joy Faulk were shot to death while sitting in the cab of Browning's pickup truck in a rural area of Rutherford County, Tennessee. Faulk and Browning had a relationship which angered petitioner, Faulk's former lover. The night of the murders a police officer observed a brownish colored pickup truck belonging to Clark pursuing Browning's truck in the general vicinity of the homicides.
 
 
 3
 The murder weapon, a .25 caliber pistol, was identified as belonging to petitioner's friend, Terry Hill. Petitioner had borrowed the handgun from Hill a few days before the shooting and had informed Hill that the gun had been stolen; it was found following the murders on a roadside near Clark's home.
 
 
 4
 Faulk's two young children, ages six and three, were with Faulk and Browning in the truck the night of the shooting, and were found afterward wandering along a rural road seeking help. The older child testified at trial that 'Clicker' (a nickname for petitioner) had followed them the night of the shooting and then had shot her mother and Browning. Her testimony was corroborated by what she had told others the night of the incident. The police located petitioner in his truck near the driveway to his home after the shootings. Clark fled from the police and forced a high speed chase before the officers were able to apprehend him.
 
 
 5
 At trial, consistent with the Tennessee Pattern Jury Instructions, the court charged the jury on the issue of malice, a requisite element of both first and second degree murders:[1]
 
 
 6
 All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. Thus, if the State has proven beyond a reasonable doubt that a killing has occurred, then it is presumed that the killing was done maliciously, but this presumption may be rebutted by either direct or circumstantial evidence, or by both, regardless of whether the same be offered by the Defendant, or exists in the evidence of the State.
 
 
 7
 Likewise, if a deadly weapon is handled in a manner so as to make the killing a natural or probable result of such conduct, then there is raised a presumption of malice sufficient to support a conviction of murder in the second degree unless it is rebutted by other facts and circumstances. A 'deadly weapon' is any weapon or instrument which from the manner in which it is used or attempted to be used is likely to produce death or cause great bodily injury.
 
 
 8
 Although petitioner failed to object to these trial instructions, he challenged their constitutionality in the Tennessee Court of Appeals. The Tennessee appellate court, rather than relying on this procedural default, rejected petitioner's constitutional challenge on its merits. The petitioner exhausted his state remedy, and the district court properly assumed jurisdiction of the habeas corpus action under 28 U.S.C. Sec. 2554.
 
 
 9
 We are called upon, then, to deciee (1) whether the jury isntructions impermissibly shifted the burden of proof to the defendant, and (2) whether the error, if any, was harmless.
 
 
 10
 This court has previously considered similar issues and has concluded that such presumption-of-malice instructions violate the fourteenth amendment's due process clause, following Sandstrom; see Phillips v. Rose, 690 F.2d 79 (6th Cir. 1982); Conway v. Anderson, 698 F.2d 292 (6th Cir.), cert. denied, 103 S. Ct. 3092 (1983); and Engle v. Koehler, 707 F.2d 241 (6th Cir.), cert. granted, 104 S. Ct. 231 (1983), aff'd by equally divided Court, 104 S. Ct. 1673 (1984). That instruction given in Phillips, a Tennessee case, was:
 
 
 11
 If a deadly weapon of any kind or character is handled in a manner so as to make the killing a natural or probable result, malice will be presumed from the use of the weapon.
 
 
 12
 690 F.2d at 80. A part of the instructions given in the present case is similar to those given in Phillips.
 
 
 13
 Appellee argues that the error, if any, was cured by another jury instruction in this case which directed the jury to consider all the evidence in reaching a verdict. We find this argument unpersuasive. We find the instructions in question here to run afoul of Sandstrom, and that Phillips is also persuasive, because the intent of petitioner, and other defense raised by him relating to his mental capacity at the time, were very much at issue.
 
 
 14
 In Connecticut v. Johnson, 460 U.S. 73, 75 n.1 (1983), Justice Blackmun characterized three possible positions that may be taken in considering implications of Sandstrom:
 
 
 15
 (1) Sandstrom errors may be harmless where 'the evidence of guilt was overwhelming';
 
 
 16
 (2) Sandstrom errors may be harmless where the affected element of the crime is not a disputed element in the case;
 
 
 17
 (3) Sandstrom errors may never be considered harmless.
 
 
 18
 Justice Blackmun noted that authority existed for all three views.
 
 
 19
 In Johnson, speaking through Justice Powell, four Justices, taking a different position than did Justice Blackmun, applied a traditional harmless error analysis established in Chapman v. California, 386 U.S. 18 (1967).[2] Under this analysis, error may be disregarded where the beneficiary of the error 'prove[s] beyond a reasonable doubt that there error complained of did not contribute to the verdict obtained.' Id. at 24.
 
 
 20
 In Engle v. Koehler, 707 F.2d at 246, we observed:
 
 
 21
 The prejudicial effect of a Sandstrom instruction is largely a function of the defense asserted at trial. If the defendant acknowledges that an intentional, malicious killing occurred and only claims non-participation, then a Sandstrom instruction may be harmless. Conversely, if the defendant asserts lack of mens rea, a Sandstrom instruction can be extremely prejudicial even if overall proof of intent or malice is substantial.
 
 
 22
 The Court held that because the defendant in that case admitted the killing, 'but denied having the requisite mens rea to sustain a murder conviction because of the combined effects of intoxication, the librium pills and mental disease,' the trial court's instructions in regard to malice and intent could not be considered harmless.
 
 
 23
 Thus both Phillips and Koehler would seem to indicate that the Sandstrom error is not harmless where, as here, defendant claims, among other defenses: (1) because of mental illness and intoxication he was not guilty; and (2) temporary insanity. Clark therefore asserted clearly 'lack of mens rea,' and it cannot be denied that the placing of the burden on defendant to show that he lacked the requisite intent required under the first degree murder charge could be prejudicial. Compare Conway v. Anderson, 698 F.2d at 285, where retroactive application of Sandstrom was recognized and it was held that 'the corrupting effect of a Sandstrom instruction is to a great extent a function of the defense . . . imposed at trial.' The court there also found that where mens rea is 'integral to the criminal offense . . . a Sandstrom instruction . . . possesses the capability of being extremely prejudicial.' Id.
 
 
 24
 Accordingly, we agree with the trial court in this case that there was a Sandstrom violation inherent in the instructions given by the Tennessee trial court, and that in this murder case involving a defense of lack of mens rea, the error not harmless beyond a reasonable doubt, despite the substantial evidence of petitioner's guilt presented to the jury.
 
 
 25
 Were we writing on a clean slate, we would direct our inquiry to that suggested by Justice Powell (dissenting) in Connecticut v. Johnson, 460 U.S. at 97 n.5:
 
 
 26
 the inquiry is whether the evidence is so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption.
 
 
 27
 If that were the question in this case, apart from prior precedent established in the cases cited from our circuit (Phillips, Koehler, and Conway), we might be able to respond in the affirmative.
 
 
 28
 For the reasons stated, however, we must AFFIRM the district court and direct the issuance of the writ of habeas corpus unless the State of Tennessee elects to re-try petitioner within ninety (90) days from the issuance of this Per Curiam.
 
 
 
 [1]
 First degree murder requires proof of a 'willful, deliberate, malicious and premeditated killing.' Tenn. Code Ann. Sec. 39-2-202. Second degree murder requires a willful killing, done with either expressed or implied malice aforethought. Gordon v. State, 478 S.W.2d 911 (Tenn. 1971). 'Expressed malice' is actually contemplating the injury to the party slain, while 'implied malice' is the more general wicked, depraved and malignant state of mind. See Fox v. State, 1 Tenn. Crim. App. 308, 441 S.W.2d 491 (1968)
 
 
 [2]
 Justice Stevens in Johnson sided with neither Justice Blackmun nor Justice Powell. Rather, he was of the view that harmless error is not a matter of constitutional dimension, and thus where not applied by the state appellate court, would not warrant certiorari action by the Supreme Court. He would have dismissed the writ, thus, in effect, affirming the state court, and joined the four justice plurality as to the result reached