Peter James ATHERTON, Appellant,

v.

Albert BROOKS, Jr., et al., Appellees.

No. 90–CV–1003.

District of Columbia Court of Appeals.

Argued Feb. 6, 1992.
Decided Sept. 11, 1992.

Peter James Atherton, appellant pro se.

Steven M. Schrier, with whom Michael J. McAuliffe, was on the brief, for appellees.

Before ROGERS, Chief Judge, and TERRY and FARRELL, Associate Judges.

TERRY, Associate Judge:

This case arose from a traffic accident in which Brooks' car collided with Atherton's car on an icy street. Because Brooks was not insured, Atherton's insurance carrier was obliged to reimburse Atherton for the damage to his car under an uninsured motorist clause in his policy. Atherton refused, however, to accept his carrier's proffered payment. He then brought an action based on allegations of negligence and breach of contract, naming Brooks, the insurance carrier, and its agent as defendants. During the trial Atherton, proceeding *pro se*, engaged in conduct which, in the court's opinion, prejudiced the defendants' right to a fair trial. The court declared a mistrial and later granted the defendants' motion to require Atherton to pay more than $5,000 in attorney's fees before being allowed to go to trial again.

Because Atherton proceeded *in forma pauperis* during part of the proceedings below and is *in forma pauperis* before this court, it appears that he may be unable to pay this sanction and that the effect of the trial court's order may be to dismiss all of his claims. Furthermore, the nature of Atherton's courtroom behavior is not clear from the record, and thus we cannot decide whether it was sufficiently outrageous to warrant a dismissal. We therefore remand this case to the trial court to determine whether Atherton has the financial means to pay the sanction imposed. If he does not, the court must then decide whether his conduct during the trial warranted a dismissal, or whether justice would be adequately served by a lesser sanction.

Albert Brooks was driving to pick up his wife shortly before midnight on January 14, 1984. There had been an ice storm earlier that evening, and the road conditions were very poor. As Brooks attempted to slow down for a stop sign, his car skidded and collided with the rear of Atherton's parked car. Brooks was not insured. Atherton's insurance carrier, Great American Insurance Company, was obliged to reimburse Atherton under an uninsured

motorist policy, but the carrier apparently refused to pay the amount of damage that Atherton believed he had incurred. Thus Atherton filed this suit against the carrier and its agent, claiming breach of contract, and against Brooks, claiming negligent operation of a motor vehicle. After extensive discovery, trial began in April 1989, and at its conclusion the jury found that Brooks had not been negligent. Atherton then moved for judgment notwithstanding the verdict or, alternatively, for a new trial. The request for a new trial was granted on the ground that the verdict was contrary to the weight of the evidence. Some time later, a different trial judge granted the defendant's motion for partial summary judgment, dismissing Atherton's breach of contract claim and ordering that the trial proceed on the issues of liability for the accident and property damage only.

The second trial lasted a little more than two days, and only one witness testified, Albert Brooks. Atherton represented himself, as he had done at the first trial. Early in the proceedings on the second day, the court sustained a number of defense objections regarding the form and relevance of Atherton's questions on cross-examination. The court then excused the jury in order to warn Atherton that he was "acting exasperated, trying to communicate to the jury, whether intentionally or otherwise, that I am giving you a difficult time because you are not a lawyer...." Later that day Atherton experienced difficulty in impeaching the witness and asked for the court's indulgence, saying, "I'm stumbling through something and I am not too knowledgeable...." The judge then said to Atherton, in open court, "I told you about this before." Soon after that exchange the judge warned Atherton at the bench:

I cannot simply let you meander and ask me to help you, because I'm not doing that, and if you continue to do it, I may have no recourse but to declare a mistrial, because you're making it perfectly clear to me at this point that your inability to artfully and appropriately ask questions is going to eventually become so prejudicial to the defense that they won't be able to get a fair trial in this case.

A similar discussion took place a few moments later, with the judge again warning that Atherton's "mannerisms [and] little speeches ... tending to suggest that I am being unfair to you" could produce a mistrial.

At the start of the third day of trial, the judge *sua sponte* declared a mistrial because he concluded that it was not possible for the jury to "fairly and impartially reach a verdict ... based upon the actions of Mr. Atherton." The defendants later filed a motion for sanctions in which they sought dismissal of Atherton's complaint with prejudice, as well as attorney's fees.[1] The trial court entered an order stating simply that the motion "is hereby granted." Later, however, the court issued an amended order stating in part:

[I]t appearing to the Court that Plaintiff deliberately provoked a mistrial, that Plaintiff had been alerted to the request for sanctions at the conclusion of the trial, and it further appearing to the Court that the hourly rate charged by counsel and the work performed are reasonable, it is ...

ORDERED, that the motion to dismiss the complaint with prejudice is DENIED; and it is further

ORDERED, that Defendant's motion to stay proceedings in this Court is GRANTED until such time as Plaintiff pays Defendants' reasonable attorney's fees in the amount of $5,329.00.[2]

The trial court imposed this sanction on Atherton after having granted Atherton's motion for leave to proceed *in forma pauperis*. This court also permitted Atherton to proceed *in forma pauperis* on this appeal. In these circumstances, we conclude

---

1. The request for sanctions was based on "Superior Court Rule 11 and [the trial court's] inherent power to control its own courtroom." We see no basis in the record for any sanctions under Rule 11. *See Chevalier v. Moon,* 576 A.2d 722, 724 (D.C.1990).

2. The motion had actually requested $5,379.00 in attorney's fees, but this $50 discrepancy is not contested on appeal.

that the trial court, before requiring Atherton to pay his opponents more than $5,000 in attorney's fees,[3] should have made a finding that he was able to do so. If he cannot pay that sum, then the court's order is a *de facto* dismissal of his claims, and a lesser sanction should at least be considered.

This court has said on many occasions that dismissal of a party's claim is an extreme sanction that should be imposed "only upon a showing of severe circumstances." *Koppal v. Travelers Indemnity Co.*, 297 A.2d 337, 339 (D.C.1972); *see, e.g., Massengale v. 3M Business Products Sales, Inc.*, 504 A.2d 574, 577 (D.C.1985). Although it is clear from the record that the trial judge was justifiably exasperated with Atherton's conduct, the record does not reveal in sufficient detail just what it was that Atherton did so as to lead the judge to impose a sanction which, given Atherton's *in forma pauperis* status, was tantamount to dismissal.[4]

Thus we remand this case to the trial court with instructions to do two things. First, the court must determine whether Atherton is able to pay $5,329.00 in attorney's fees because, if he is not, the court's order imposing this sanction must then be viewed as a *de facto* dismissal. In that event, the court must consider whether any sanction less severe than dismissal will be sufficient to remedy what the court perceived as improper courtroom behavior by this *pro se* litigant. Second, and independently, we direct the court to make specific findings as to just what "actions" by Mr. Atherton served as the basis for its order imposing sanctions. The references in the record to "mannerisms [and] little speeches" and to Atherton's "inability to artfully and appropriately ask questions" are not sufficient, on the present record, to sustain that order.[5]

*Remanded.*

---

3. No challenge is made here to the trial court's conclusion that $5,329.00 is a reasonable amount. Atherton's contention, rather, is that he should not have to pay anything at all.

4. It is of course true that a prevailing litigant may recover attorney's fees if the opposing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons...." *1901 Wyoming Avenue Cooperative Ass'n v. Lee*, 345 A.2d 456, 465 (D.C.1975); *see Chevalier v. Moon, supra* note 1, 576 A.2d at 724; *Trilon Plaza Co. v. Allstate Leasing Corp.*, 399 A.2d 34, 37 (D.C. 1979); *Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Ass'n*, 385 A.2d 20, 24 (D.C.1978). We have upheld awards of attorney's fees when the trial court has made an express finding of bad faith or when there is "record support for such a finding." *Launay v. Launay, Inc.*, 497 A.2d 443, 450 (D.C.1985); *accord, Wisconsin Avenue Associates, supra*, 385 A.2d at 24; *Trilon Plaza, supra*, 399 A.2d at 38. But there is no such finding in this case, and we cannot discern any basis for one in the present record.

5. The other contentions made by Atherton on this appeal have, for the most part, been made moot by the trial court's amended order. To the extent that they have not, they are without merit.