**Larry D. WILLIAMS, Appellant,**

v.

**Jimmy CARTER, Sheriff, Poinsett County; Gene Henderson, Head Jailor, Poinsett County; Glenn Miller, Trustee, Poinsett County; Cleo Shelly, Trustee, Poinsett County, Appellees.**

No. 92–3957.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1993.

Decided Nov. 30, 1993.

David M. Donovan, Little Rock, AR, argued, for appellant.

Ralph Charles Ohm, Hot Springs, AR, argued (David H. White, on the brief), for appellees.

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON and BEAM, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

The plaintiff, a former inmate at the Poinsett County, Arkansas, Jail, appeals the District Court's judgment in this 42 U.S.C. § 1983 case. Larry D. Williams contends that the defendants, including Jimmy Carter, the Poinsett County Sheriff, and Gene Henderson, the jail supervisor, maintained the jail in an unconstitutional manner. Before the hearing, Williams requested appointed counsel, but the Magistrate Judge denied his motion. At the hearing, Williams, acting *pro se*, asked several times why all of the witnesses he had requested were not present. Williams had submitted two different, completely exclusive, witness lists; however, the Magistrate Judge had subpoenaed witnesses on the basis of only one of those lists. The District Court found that the plaintiff's complaints did not rise to the level of cruel and unusual punishment under the Eighth

Amendment. On appeal, Williams argues that the Magistrate Judge's blanket refusal to subpoena witnesses included on the first list was an abuse of discretion. We agree.

## I.

### A.

Larry Williams was a prisoner in the Poinsett County Jail from September 3, 1991, to January 14, 1992, where he was awaiting trial on charges of forgery and possession of drug paraphernalia. In his complaint, he alleged that the conditions of his confinement violated his constitutional right to be free of cruel and unusual punishment under the Eighth Amendment.[1] In addition, the plaintiff alleged that defendant Carter threatened him in an attempt to prevent him from pursuing this lawsuit further. The defendants responded that the jail conditions were not constitutionally infirm. After conducting an evidentiary hearing, the District Court found for the defendants, taking the view that, although the conditions were not ideal in many respects, they did not rise to the level of a constitutional violation. Because we hold that the Magistrate Judge's decision not to appoint counsel, in combination with his failure to resolve confusion over the witness lists, was an abuse of discretion, we do not reach the issue of whether the District Court erred on the merits of Williams's claims. We now turn to the witness-list issue.

### B.

Before the evidentiary hearing, Williams asked for a court-appointed lawyer. The Magistrate Judge applied the factors listed by this Court in *Johnson v. Williams*, 788 F.2d 1319 (8th Cir.1986), for evaluating whether to appoint counsel for a *pro se* prison litigant. The factors the Court examined included: 1) whether the complaint had survived a motion to dismiss, indicating that it was not frivolous; 2) the complexity of the case in general; 3) the plaintiff's ability to investigate the facts of the case; 4) the existence of conflicting testimony; and 5) the complexity of the legal issues involved in the case. After applying this test to the plaintiff's case, the Magistrate Judge denied the request, finding that the pertinent factors weighed against the appointment of counsel. Specifically, the Court found that the "plaintiff[ ] appeared to be capable of presenting [his] claims which [were] neither factually nor legally complex." Slip op. 2 (order filed April 27, 1992).

On August 7, 1992, the plaintiff filed a handwritten pleading entitled "Witness Request List." In that pleading, the plaintiff requested that the Court subpoena several people to testify at the evidentiary hearing. First, Williams requested that the Court subpoena two members of the Arkansas Criminal Detention Facilities Review Board, which had investigated the jail in December, 1991. Second, he requested subpoenas for eight other individuals incarcerated at the jail during the time period covered by the allegations. Third, Williams requested that the Court subpoena a reporter from a local television station. Finally, he requested a subpoena for then Governor Bill Clinton.

Several days later, on August 12, 1992, the Magistrate Judge set the matter for trial and sent an order to the plaintiff which included a pre-printed form for listing witnesses. Williams filled out this form, listing the parties to the action and two other witnesses, and returned it on August 21, 1992. This second list did not include any of the witnesses named on the August 7, 1992, list. Using only the second list, the Magistrate Judge issued a subpoena for only one witness, Antonio Burnett, a non-party. The order did not mention a second non-party witness requested by the plaintiff in the August 12 list, nor did it mention the other witnesses listed in the August 7 witness list.

---

1. The conditions which the plaintiff alleged included: 1) no regular physical examination of prisoners upon intake; 2) no fresh air ventilation; 3) no exercise yard calls; 4) infrequent or irregular changes of clothing; 5) unsanitary plumbing facilities; 6) overcrowding; 7) inmates opening and delivering the personal mail of other inmates; 8) inmates issuing other inmates' medication; 9) no reading materials except the Bible; 10) no pens provided; 11) inadequate food preparation and unsanitary delivery; 12) general unsanitary conditions; 13) inadequate security; 14) inadequate and unsafe lighting; and 15) inadequate visitation facilities.

At the hearing, the plaintiff's only witnesses were himself, the defendants, and Antonio Burnett. Burnett testified about the conditions of the Poinsett County Jail. He verified some of the plaintiff's complaints, but offered contradictory testimony on others. Tr. 92–103. In addition, his testimony revealed an unwillingness to participate in the hearing at all. *Id.* at 92, 95.

The plaintiff told the Court throughout the evidentiary hearing that he was confused as to why most of his witnesses were not present. For example, at the beginning of the hearing, Williams asked the Magistrate Judge for a continuance, because all of his witnesses were not present. The Magistrate Judge responded that he had allowed those witnesses whom he deemed necessary. *Id.* at 5. After his own testimony and before Burnett's, Williams again mentioned that he had asked for several other witnesses. *Id.* at 55. Then, after conducting his direct examination of Burnett, Williams requested a continuance to contact his witnesses, noting that he had requested the Court to subpoena 12 others as well. *Id.* at 96. Williams raised the issue yet another time after Burnett stepped down, and presented the Magistrate Judge with a copy of the August 7 witness list. *Id.* at 104.

At this point, the Magistrate Judge allowed Williams to call one additional witness, Gary Gardner, who coincidentally happened to be in the courthouse. Williams had included Gardner on the August 7 list. The Magistrate Judge, however, restricted Gardner to impeaching Burnett's testimony, and prohibited him from testifying directly about the jail conditions at issue. *Id.* Gardner stated that Burnett might have been influenced in his testimony by a pending "Act 814" work-release application. According to Gardner, Burnett, while waiting to testify, had said that he was worried that if "he testified against the Sheriff that the Sheriff [might] not sign his 814 [for release from prison]." *Id.* at 106. Thus, the testimony of Burnett, the only non-party witness with first-hand knowledge of the jail conditions, may have been colored by the pending work-release application.

## II.

28 U.S.C. § 1915(c) authorizes the trial court to issue and serve process in proceedings *in forma pauperis*. The decision to grant or deny subpoenas for indigent parties at the expense of the Government is within the discretion of the trial court. We have defined discretion as a "range of choice." *Kern v. TXO Production Corp.,* 738 F.2d 968, 970 (8th Cir.1984). We will not disturb such exercises of discretion "as long as [the trial court] stays within that range and is not influenced by any mistake of law." *Id.* We review such decisions "mindful that the district courts are closer to the facts and the parties," and reverse them only when an abuse of discretion occurs. *Id.*

A court may abuse its discretion in three principal ways:

> when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Id.* See also *United States v. Kramer,* 827 F.2d 1174, 1179 (8th Cir.1987); *United States v. Dockery,* 955 F.2d 50, 54 (D.C.Cir.1992). The Magistrate Judge's abuse of discretion in this case occurred in the third manner and resulted from the combination of the denial of counsel and the failure to recognize the first witness list filed by Williams.

At the time Williams asked that the Court appoint counsel, counsel may not have been necessary. However, Williams's evident confusion with respect to his witness lists and compliance with the Court's customary pre-trial procedures made it clear how difficult it was for him to proceed in this matter without counsel. His August 7 list was filed before he received the District Court's form order requiring the parties to file and serve witness lists a certain period of time in advance of the date set for the evidentiary hearing. When Williams, a few days later, did receive this form order, he evidently believed that he had already com-

plied with it in part, and that all he needed to do was to list any witnesses in addition to those already specified on the August 7 list. A lawyer, upon carefully reading the form order, might have realized two things: that the August 7 list was not in compliance, because it failed to summarize the expected testimony that each of the requested witnesses would give, and that a new list, listing all the witnesses and summarizing their expected testimony, needed to be filed. We believe that to demand such a close reading from an uncounseled litigant went too far.

Possibly the District Court overlooked the first list initially, but when Williams called its attention to his August 7 list at the beginning of the evidentiary hearing and requested a continuance, we believe that the Magistrate Judge should at least have looked at the August 7 list and made a determination as to whether any of the persons listed were likely to provide relevant and material evidence. We cannot be absolutely certain as to what the Magistrate Judge's mental processes were, but it appears that he rejected the August 7 list out of hand, treating the later list, the one filed after entry of the form order, as the only one deserving of judicial attention. We believe this action held an uncounseled litigant to too strict a standard. When a court has denied a motion for appointment of counsel, it should continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree. In our view, this is what occurred here. Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding. See *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Native American Council of Tribes v. Solem,* 691 F.2d 382 (8th Cir.1982); *Mousseaux v. United States Comm'r of Indian Affairs,* 806 F.Supp. 1433 (D.S.D.1992); *Serna v. O'Donnell,* 70 F.R.D. 618 (W.D.Mo.1976).

If the Magistrate Judge had considered the names on the August 7 list, he might well have decided that some of them would be likely to offer relevant evidence. Obviously the Governor would not be included in this number: there is no reason to suppose that he knew anything about the conditions in the Poinsett County Jail. On the other hand, State officials who had recently inspected the jail and inmates who had been in the jail at the time that the conditions complained of allegedly existed could well have thrown some light on the situation. We believe further proceedings in the District Court would be appropriate in order to determine whether any of these witnesses should have been subpoenaed. On remand, the District Court should exercise its discretion with respect to the particular names on the August 7 list. If it determines for good reasons stated that none of these persons should be called, it should say so, whereupon the judgment for the defendants would be reinstated, subject to the right of the plaintiff to appeal to this Court. If, on the other hand, the District Court determines that some of the witnesses on the August 7 list should be subpoenaed, it should issue subpoenas for them and hold an additional evidentiary hearing at which they could testify, together with any additional defense witnesses that the other side might choose to call. In this event, the District Court would make new findings of fact and enter a new judgment, from which any party aggrieved would have the right to appeal.

### III.

The judgment is reversed, and the cause remanded to the District Court for further proceedings consistent with this opinion. We also suggest that the District Court should reconsider whether the circumstances of this case justify the appointment of counsel.

It is so ordered.