92 F.3d 1187
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Louis E. AIELLO, also known as Luigi Aiello, Plaintiff-Appellant,
v.
Gary R. McCAUGHTRY, et al., Defendants-Appellees.
 No. 94-1935.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 16, 1996.*
Decided July 25, 1996.
 
 Before CUMMINGS, COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Louis Aiello, a prisoner, claims that Warden Gary McCaughtry, Lynn Oestreich, Patricia Garro and William Ball violated his First Amendment rights. These prison officials withheld his magazines and newspapers while he stayed in the Adjustment Center ("AC"), a segregation unit at Waupun Correctional Center, from October 19, 1992 through January 7, 1993. After moving out of the AC, he received the back issues and began to receive new issues as usual. He and another former inmate, Colt Brownelli, who is not involved in this appeal, filed suit pursuant to 42 U.S.C. § 1983 to protest this deprivation among other alleged violations of state and federal law. The district court dismissed or denied the other claims. Since Aiello has not contested its disposition of them, we need not address them. The district court denied both parties' motions for summary judgment on the First Amendment claim, and the claim proceeded to trial. After the close of evidence, the district court granted judgment as a matter of law to Oestreich, Garro and Ball because Aiello had failed to establish their personal responsibility for McCaughtry's allegedly unconstitutional policy of denying publications to prisoners in the AC. See Fed.R.Civ.P. 50(a). (Aiello has not challenged the validity of this particular decision itself, and we therefore decline to address its propriety.) The jury then filed a special verdict. It found in favor of McCaughtry because his policy was reasonably related to legitimate penological interests. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). Aiello raises a variety of alleged procedural and evidentiary errors on appeal. We affirm.
 
 
 2
 First, Aiello claims that the defendants waived the "affirmative defense" of having a legitimate penological interest because they failed to plead it in their answer. See Fed.R.Civ.P. 8(c). Even if Rule 8(c) required parties to plead the existence of a legitimate penological interest as an affirmative defense (a proposition for which we have found no substantial authority), the failure to comply with Rule 8(c) is not fatal when the court has recognized the defense and the parties have litigated it. Blaney v. United States, 34 F.3d 509, 512 (7th Cir.1994).
 
 
 3
 In a similar vein, Aiello contends the defendants waived the theory that publications posed a threat to prison safety because newspapers and magazines provided the raw materials for weapons such as clubs or even a spear. (The spear, which had been used to attack a prison guard at another Wisconsin prison, was not allowed into evidence at trial.) In support of their motion for summary judgment, the defendants provided evidence that newspapers and magazines could be used to clog pipes, thereby creating floods, or to set fires, but they did not mention their use as weapons. Aiello believes that this omission amounted to a waiver of the "weapons" theory. It did not. Cf. Flynn v. Sandahl, 58 F.3d 283, 287 (7th Cir.1995) ("[W]e know of no cases ... stating that a plaintiff must raise every legal issue in his motion for summary judgment.").
 
 
 4
 The defendants sought summary judgment on the First Amendment claim, but the district court denied their motion because they failed to provide sufficient evidence to demonstrate the existence of a rational relationship between the interference with the receipt of publications and a legitimate penological interest. The court then denied Aiello's motion because he failed to provide sufficient evidence to establish the absence of such a relationship. He argues that the basis for the district court's denial of the defendants' motion logically entitled him to relief on his own. However, we will not review the denial of a motion for summary judgment on the basis of insufficient or conflicting evidence when such evidentiary issues have subsequently been presented at trial. Watson v. Amdeco Steel, Inc., 29 F.3d 274, 277 (7th Cir.1994). Although three of the four defendants received judgments as a matter of law under Rule 50(a) instead of a jury verdict, the same principle nonetheless applies. General Signal Corp. v. MCI Telecommunications Corp., 66 F.3d 1500, 1507 (9th Cir.1995).
 
 
 5
 Aiello was denied subpoenas for four witnesses because he failed to tender the witness fees. Fed.R.Civ.P. 45(a)(1). (He was able to subpoena a fellow prisoner who waived the witness fee.) Two of these witnesses were defendants McCaughtry and Garro. Two others were prison employees, Brian Westra and Melanie Houge, whom Aiello planned to use to verify documents, confirm that his publications had been withheld and describe the source and implementation of the AC policy. Relying on Coleman v. St. Vincent De Paul Soc'y, 144 F.R.D. 92, 96 (E.D.Wis.1992), Aiello asked the district court to advance the witness fees on his behalf under 28 U.S.C. § 1915(c),[1] because he was a pauper. The court refused on the grounds that § 1915(c) does not authorize such payments. Since he could not pay the fees for these witnesses, he could not subpoena them. Aiello's problem was underscored at trial when he attempted to call McCaughtry and Ball, another defendant who had not been on his subpoena list, to the stand as his witnesses. They had been in the courtroom before, but they were not present when he attempted to call them. (Aiello contends they were probably still somewhere in the court house.) The court declined to order that they be found and forced to testify because Aiello had neither subpoenaed them, nor secured an agreement from their attorney to provide them as his witnesses. See McGill v. Duckworth, 944 F.2d 344, 353 (7th Cir.1991) ("Persons need not attend the proceedings just because they have been named as parties...."). McCaughtry and Ball subsequently testified on their own behalf, and Aiello had the opportunity to cross-examine them.
 
 
 6
 Whether the district court may advance witness fees on behalf of an in forma pauperis litigant under § 1915(c) is an open question in this circuit, although we have held that § 1915(c) does not allow the court to waive the witness fees altogether. McNeil v. Lowney, 831 F.2d 1368, 1373 (7th Cir.1987). Advancing fees differs from waiving them in that the federal government bears the cost of payment in the former case, while the witness goes without any advance payment in the latter. Subsection (c) states:
 
 
 7
 The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.
 
 
 8
 28 U.S.C. § 1915(c) (recodified as § 1915(d) (1996)). This provision says that indigents may subpoena witnesses just like anyone else. However, apart from subpoenas issued on behalf of the United States or an officer or agency thereof, Fed.R.Civ.P. 45(b)(1), anyone else would also have to tender the witness fees. This provision does not appear to expressly authorize the payment of such fees in instances where non-paupers would have to pay.
 
 
 9
 Prior to McNeil, this court twice expressly refused to resolve this issue, and each time it cited Morrow v. Ingleburger, 584 F.2d 767, 772 n. 7 (6th Cir.1978), in dicta suggesting that § 1915(c) may authorize the district court to order the payment of witness fees on an indigent's behalf. Merritt v. Faulkner, 697 F.2d 761, 767 (7th Cir.1983); McKeever v. Israel, 689 F.2d 1315, 1317, 1322 (7th Cir.1982). However, three weeks after this court decided Merritt, the Sixth Circuit itself rejected the footnote in Morrow as dicta. Johnson v. Hubbard, 698 F.2d 286, 290 n. 4 (6th Cir.), cert. denied, 464 U.S. 917 (1983). Thus far, the Second, Fifth, Sixth and Eighth Circuits have held that § 1915(c) does not authorize the payment of witness fees on behalf of in forma pauperis plaintiffs, and the Third and Ninth Circuit have mentioned an absence of statutory authority for the expenditure of such funds in the context of § 1915.[2] None of the other circuits currently hold that § 1915(c) authorizes the payment of such fees on behalf of an indigent, although we have found dicta and dissents in favor of such an interpretation.[3] We also note that § 1915(a) permits indigents to waive pre-payment of the filing fee required by 28 U.S.C. § 1914(a). (Congress has qualified § 1915(a)'s waiver provision with respect to prisoners, who now fall under the new payment and collection scheme set forth in 28 U.S.C. § 1915(b) (1996).) The Eleventh Circuit has suggested that subsection (a) authorizes subpoenaing witnesses on behalf of indigents, but the weight of authority is generally to the contrary.[4] We agree with the other circuits that Congress has not authorized waiver or advancement of witness fees on behalf of indigents under § 1915(c). See Means, 741 F.2d at 1056 (observing that legislative history of § 1915 does not address payment of witness fees); cf. also Kenneth R. Levine, In Forma Pauperis Litigants: Witness Fees and Expenses in Civil Actions, 53 Fordham L.Rev. 1461, 1468-70 & n. 27-33 (May 1985) (arguing that legislative history of § 1915(c)'s predecessor indicates that witness fees were not intended to be included).
 
 
 10
 The district court did not necessarily lack the ability to obtain these witnesses. As Aiello points out for the first time on appeal, Federal Rules of Evidence 614 and 706(b) authorize the district court to call its own lay witnesses and expert witnesses respectively. However, setting aside the question of whether Aiello has waived this issue, the invocation of this power lies within the discretion of the district court and is generally reserved for compelling circumstances. Means, 741 F.2d at 1059. Aiello was able to obtain discovery through other means such as interrogatories, admissions and the testimony of a fellow prisoner who agreed to waive his fee. He has not informed this court of any particular information that he desired from the four witnesses that he could not obtain through these alternative means.[5] See McNeil, 831 F.2d at 1374 n. 3; cf. Means, 741 F.2d at 1059 (considering whether witnesses sought were absolutely essential to progress of fair trial and to interests of justice). We therefore find no abuse of discretion in the district court's failure to sua sponte subpoena the four witnesses as its own.
 
 
 11
 Aiello also asserts that the district court improperly denied his motion to compel the defendants to produce certain document and exhibits relating to their "weapons" theory. In their witness list, the defendants said that they planned to introduce testimony from Bruce Thomure, a guard at the Columbia Correctional Institution who had been attacked with a paper spear, and Vern Gove, who investigated the assault on Thomure for the Columbia County Sheriff's Department. Aiello moved to compel discovery of a broad array of information, including information concerning these witnesses and the attack. The court denied the motion as premature. Later, it appears that Aiello moved to compel discovery again during a conference by telephone. And it appears that the defendants objected because the Columbia County Sheriff's Department had the materials, not they. We stress "appears" because, as the defendants point out, Aiello has not provided us with a record of this proceeding or otherwise complied with Federal Rule of Appellate Procedure 10. Aiello did not request a transcript of the conference, timely file a statement of his intent to pursue this issue or, assuming that the conference was not recorded, submit a statement of the evidence based on the best available means concerning what had transpired. Fed.R.App.P. 10(b),(c). After the conference, the court stated in an order that it denied the motion to compel because the materials were not in the defendants' possession.[6]
 
 
 12
 Without citing any evidence in the record, Aiello asserts that the defendants could easily have obtained the materials by asking for them. The Tenth Circuit has held that a court has the power to order a party to ask for its own property from a third party for the purpose of enabling discovery. See United States v. Tynan, 776 F.2d 250, 252 (10th Cir.1985) (on rehearing). This may be an efficient means to solve a discovery problem in some circumstances. However, there is no evidence in the record before us that Aiello made such a suggestion at the conference. The court did not necessarily abuse its discretion by refusing to order the defendants to produce something they did not have control, custody or possession of. See Fed.R.Civ.P. 34. Indeed, a district court may abuse its discretion by sanctioning a party for failing to comply with such an order.[7] We do not know which materials Aiello specifically requested the second time, and whether they belonged to the defendants or a third party. Aiello must bear the burden of this insufficiency. Cf. Fed.R.App.P. 10. Perhaps the court might have been able to order the defendants to request the items. However, based on the record before us, we cannot say that Aiello has demonstrated an abuse of discretion as a matter of law by failing to do so.
 
 
 13
 Aiello also claims that at this conference the court "agreed" that the records should be subpoenaed directly from the sheriff's department, and then nonetheless denied the request. (Appellant's Br. at 16.) "Appellant would have prepared all the necessary documents and all the court had to do was sign the subpoena. But, the court refused to do so over the phone." (Id.) Nothing in the record indicates that any such request was made, much less denied. Nor has Aiello directed us to any such part of the record on appeal. Even if the request was made, the alleged refusal to sign subpoena "over the phone" may refer to an attempt to head off the issuance of subpoenas that failed to comply with Federal Rule of Civil Procedure 45(a)(3) (subpoenas to be signed by court clerk or attorney acting as officer of court). Or the court may have had some other reason, or no reason at all. Aiello has given us nothing in the record to review. Because he failed to supply relevant evidentiary materials, to comply with Rule 10, or to support his assertions with citations to the record, we deem this claim waived. Fed.R.App.P. 10; Fed.R.App.P. 28(a)(4), (6) & (e).
 
 
 14
 At trial, over his objection, the district court allowed defense counsel to impeach Aiello by revealing on cross-examination Aiello's convictions for three counts of murder, two counts of armed robbery, and one count of arson. Fed.R.Evid. 609(a)(1). Similarly, again over Aiello's objection, defense counsel revealed through cross-examination that Aiello's witness, Kenneth Jaworski, had been convicted of five or six counts of sexual assault (Jaworski could not recall precisely). Other than attempting to ascertain the exact number of the respective counts, defense counsel did not delve into the details surrounding the convictions. Although the district court overruled Aiello's objections at trial without explanation, it appears that at a pre-trial conference the district court denied Aiello's motion in limine to exclude this impeachment evidence. Once again, the defendants raise Rule 10. However, in this instance, Aiello specifically requested this transcript. The district court denied the request because it ordinarily does not transmit transcripts of the jury selection process, which occurred at the hearing, and Aiello had failed to specify any issues that would necessitate the production of this transcript.
 
 
 15
 Aiello does not object to any particular reason the district court may have given at the hearing for denying his motion to exclude the convictions, nor does he assert that the district court completely failed to balance the probative value of the convictions as impeachment evidence with their unfair prejudicial effect. See Fed.R.Evid. 401 & 403. He simply argues that the probative value of these convictions exceeds their prejudicial effect. "The idea underlying Rule 609, whether right or wrong, is that criminals are more likely to testify untruthfully." Gora v. Costa, 971 F.2d 1325, 1329 (7th Cir.1992). Although a district court should be conscious of the potential unfair prejudice arising out of this sort of impeachment, the record of the trial proceedings themselves does not reveal a case in which the defendants harped on the crimes and paraded them in detail to distract the jury's attention. Wilson v. Groaning, 25 F.3d 581, 586 (7th Cir.1994). Defense counsel questioned the witnesses about their prior convictions only to the extent necessary to attempt to confirm the number of counts. Also, given that it was a prisoner's civil rights suit and that both Aiello and Jaworski testified that they were prisoners, the jury could already infer that they were in prison for a reason. Aiello has not presented on appeal a sufficient reason for finding that the district court abused its discretion.
 
 
 16
 Wisconsin Administrative Code §§ DOC 309.05 and 309.06 respectively address the procedures by which prisoners receive mail in general and publications in particular. At trial, Aiello attempted to introduce both regulations and the legislative history notes appended to them. The district court refused to let § DOC 309.05 into evidence because it dealt with mail, not publications. It then refused to send the legislative history notes for both regulations, which were admitted into evidence, to the jury room during deliberations because the notes might mislead or confuse the jurors. This decision is entrusted to the discretion of the district court. See United States v. Gross, 451 F.2d 1355, 1359 (7th Cir.1971) (holding that district court did not abuse its discretion by refusing to send entire book of statutory materials to jury room because irrelevant statutory material could mislead and confuse jury). The trial court did permit the text of § DOC 309.06 to be sent to the jury room. The jury was specifically instructed that liability would not hinge on a violation of state law or regulations.
 
 
 17
 Aiello claims that the district court erred by refusing to admit § DOC 309.05 because it did not apply to publications. Section DOC 309.06(2) expressly incorporates § DOC 309.05 by reference. However, the relevance of either of these regulations or their legislative history to the constitutionality of McCaughtry's policy concerning the AC is dubious. The regulations and their legislative history notes describe some of the benefits that accrue by allowing an inmate to exercise his First Amendment rights. The jury heard such evidence through the reading of the legislative history note to § DOC 309.05, and a limited statement of purpose appears in § DOC 309.06(1), which was sent to the jury room. The statutes also describe the general process by which inmate mail is normally screened. Even if § DOC 309.05 should have been admitted as relevant background material, the failure to introduce it was clearly harmless. There was some evidence on how inmates in general received their mail, and to that extent the regulation may have been somewhat cumulative. More importantly, the regulations have no bearing on the grounds for the decision in favor of the defendants. The district court granted judgment as a matter of law to three of them because Aiello failed to establish that they were not personally responsible for the unconstitutional policy (a holding that Aiello has not contested), while the jury found that McCaughtry had a rationally related legitimate penological interest to support his policy against allowing publications in the AC.
 
 
 18
 Aiello asks this court to review the record to see if the district court improperly overruled any of his objections to the jury instructions. He also invites us to find and raise any errors to which he failed to object. The argument in an appellant's brief must be supported with some sort of explanation or reason for why he believes the district court erred by overruling his objection, see Fed.R.App.P. 28(a)(6), and such claims cannot be preserved by bare citations to the district court record where his argument might have been made. Hunter v. Allis-Chalmers Corp., Engine Div'n, 797 F.2d 1417, 1430 (7th Cir.1986). We therefore decline Aiello's invitation and deem any such claims waived. Cf. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991).
 
 
 19
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f) (1995). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Section 1915(c) was re-codified in 1996 as section 1915(d). For simplicity's sake, we shall continue to refer to it as § 1915(c)
 
 
 [2]
 Malik v. LaValley, 994 F.2d 90, 90 (2d Cir.1993); United States Marshals Serv. v. Means, 741 F.2d 1053, 1056-57 (8th Cir.1984) (en banc ); Johnson, 698 F.2d at 289; Estep v. United States, 251 F.2d 579, 582 (5th Cir.1958) (holding that § 1915(c) does not authorize such fees, although court has inherent discretionary power to subpoena witnesses); see Pedraza v. Jones, 71 F.3d 194, 196 n. 4 (5th Cir.1995) (collecting cases); Dixon v. Ylst, 990 F.2d 478, 480 (9th Cir.1992) (holding in case in which district court refused to compensate witness on indigents behalf that court had correctly informed indigent that § 1915 did not authorize waiver of witness fees); Tedder v. Odel, 890 F.2d 210, 211 (9th Cir.1989) (holding that such fees or expenses for witnesses may not be waived because " 'the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress....' ") (quoting United States v. MacCollom, 426 U.S. 317, 312 (1976)); Boring v. Kozakiewicz, 833 F.2d 468, 474 (3d Cir.1987) (holding that although § 1915 authorizes waiver of prepayment for certain items, the court of appeals had been directed to no statutory authority or appropriation for payment of an indigent's expert witness fees in civil suits)
 In Williams v. Carter, 10 F.3d 563, 565 (8th Cir.1993), a panel of the Eighth Circuit held that the district court abused its discretion by simply ignoring an indigent party's request to subpoena witnesses. Without citing Means, 741 F.2d at 1056-57, the panel pointed out that § 1915(c) authorizes district courts to issue and serve process and said in dicta that "[t]he decision to grant or deny subpoenas for indigent parties at the expense of the Government is within the discretion of the trial court." Williams, 10 F.3d at 565 (emphasis added). Although Means does recognize some means of obtaining witnesses on behalf of indigents, § 1915(c) was not one of them.
 In surveying the law of other circuits, we also note that Estep, which was decided by the Fifth Circuit before the creation of the Eleventh Circuit, constitutes binding authority in the latter circuit as well. However, the Eleventh Circuit may permit the advancement of fees under § 1915(a) and the inherent power of the court to subpoena witnesses on behalf of indigents that was recognized in Estep. See Lloyd v. McKendree, 749 F.2d 705, 706-07 (11th Cir.1985).
 
 
 [3]
 Williams, 10 F.3d at 565; Means, 741 F.2d 1053, 1062-63 (arguing that § 1915(a), (c) permit court to authorize prepayment of fees) (per Lay, C.J., concurring in part and dissenting in part); Hubbard, 698 F.2d at 291-94 (per Swygert, J., dissenting)
 
 
 [4]
 Lloyd, 749 F.2d at 706-07 (citing § 1915(a) as source of district court's discretion to advance fees). But see Malik, 994 F.2d at 90; Means, 741 F.2d at 1056-57; Estep, 251 F.2d at 582; but see also Johnson, 698 F.2d at 289; but cf. also Tedder, 890 F.2d at 211-12
 
 
 [5]
 The district court declined to grant witness fees before the defendants filed their list of witnesses to be introduced at trial. Since it is not clear that the court expected McCaughtry and Garro to testify on their own behalf, we do not necessarily rely on Aiello's opportunity to cross-examine McCaughtry and Ball as alternative means. However, it is reassuring to see that he did have the opportunity to do so
 
 
 [6]
 On appeal, Aiello says that he renewed his original motion. The original motion encompassed information that would be completely irrelevant to such an investigation, but Aiello does not contest the assertion that the defendants did not have the materials. We infer Aiello's second request was limited to the weapons materials, but cannot assert this as a fact due to the state of the record
 
 
 [7]
 See Beil v. Lakewood Eng'g & Mfg. Co., 15 F.3d 546, 552 (6th Cir.1994) (holding that dismissal under Rule 37 for failure to comply with discovery request would be an abuse of discretion if party does not have ability to comply); Chevariat v. Williams Pipeline Co., 11 F.3d 1420, 1426 (7th Cir.1993) (holding that court should not have excluded evidence because of prior failure to produce it when it was not within that party's control, and pointing out that "the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession custody or control; in fact it means the opposite.")