Peter James ATHERTON, Appellant,

v.

Albert BROOKS, Jr., et al., Appellees.

No. 94–CV–1094.

District of Columbia Court of Appeals.

Argued April 24, 1997.

Decided May 6, 1999.

Peter James Atherton, pro se.

Michael J. McAuliffe, Glastonbury, for appellees, Great American Insurance Company and Haycraft Insurance Agency, Inc.[1]

Before STEADMAN and RUIZ, Associate Judges, and MACK, Senior Judge.

RUIZ, Associate Judge:

The underlying case arose from a collision that occurred on an icy road in 1984 between a 1973 Lincoln Continental driven by Albert Brooks, Jr., one of the appellees, and the parked 1968 Ford Mustang of appellant, Peter J. Atherton. Atherton sued the Great American Insurance Company ("Great American"), the issuer of his automobile insurance policy, and Haycraft Insurance Agency, Inc. ("Haycraft"), from whom he obtained the Great American insurance policy, alleging that they breached the uninsured motorist provisions of the policy by not adequately compensating him for the damage to his vehicle, and for tortious breach of contract.[2] Atherton sued Brooks for negligence in hitting Atherton's parked car.

Atherton, who appeared *pro se*, requested and was allowed to proceed *in forma pauperis*. Atherton claims that the trial court's denial of his request for a continuance to enable him to serve his witnesses and consequent dismissal of his action for lack of prosecution were an abuse of discretion by the trial court because the matter that impeded the trial, the unavailability of a witness Atherton considered important to his case, was due at least in part to the court's failure to serve subpoenas on Atherton's witnesses which he claims is required by Super. Ct. Civ. R. 54–II. In addition, Atherton contends that the trial court should have reconsidered dismissal once he indicated that he was willing to proceed to trial. We agree that dismissal of Atherton's action under the circumstances was an abuse of discretion. Although we consider that Atherton raises a serious issue concerning the scope of Rule 54–II, we do not decide whether Atherton's status as an *in forma pauperis* litigant entitled him to court assistance in serving witness subpoenas. We reverse the trial court's denial of reconsideration of the order of dismissal and remand, upon which the trial court should reconsider, if necessary, whether it has an obligation under Rule 54–11 to effect service of the subpoenas on Atherton's witnesses.[3]

1. Albert Brooks, Jr., made no submission or argument on appeal.

2. The claims for tortious breach of contract were dismissed. Atherton does not appeal the trial court's dismissal of these claims.

3. Atherton had also filed motions for directed verdict and summary judgment on the issue of

Brooks's negligence. Brooks defended on the ground that the collision had been an unavoidable accident. Atherton argues that the unavoidable accident defense is inapplicable where, as here, the dangerous driving conditions caused by

## I.

The procedural posture of this case is rather involved and the matter has been before the courts for a long time. Atherton filed his complaint in January 1987; he has had two trials prior to the proceeding that led to this appeal.[4]

The third trial, from which this appeal was taken, was set to begin on March 21, 1994, before Judge Zinora Mitchell–Rankin. On that date, with the parties present to proceed, Atherton requested a continuance because he had been unable to pay his expert witness fees, which had been set as a condition to proceed with the case. Atherton's requested continuance was denied; the case was, nevertheless, continued because there was no judge available to hear the case on that day. Atherton was admonished by Judge Mitchell–Rankin that expert witness fees were his responsibility and that he had to be prepared for trial on June 20, 1994, with all his witnesses available.

Prior to the rescheduled trial date, Atherton filed a motion to compel the clerk's office to issue subpoenas and to serve them on all his proposed witnesses. The motion was denied on June 9, 1994. A week before the rescheduled trial date, on June 13, 1994, Atherton filed a motion to continue the case because there was insufficient time to serve his witnesses.[5] On June 20, 1994, all parties appeared for trial. The trial court, Judge Mitchell–Rankin, again denied Atherton's request regarding the issuance and service of subpoenas by the clerk's office, explaining that the clerk's office will issue subpoenas, but that serving the subpoenas was Atherton's responsibility.[6]

Atherton's renewed motion for a continuance also was denied. In his motion Atherton explained that his files had been "ransacked" and thus he needed more time to get copies of relevant parts of the transcripts from the first two trials because some of the witnesses who were available for those trials were no longer available to testify. As his motion to compel the clerk to serve his subpoenas had been denied on June 9, 1994, eleven days earlier, he further argued to the court that there had not been sufficient time from the denial of his motion to the trial date for him to properly serve all of his witnesses. Specifically, Atherton mentioned that there were two officers who had observed the scene shortly after the collision. Atherton explained that be had been unable to serve one of the police officers who had been sick but was expected to return to duty that night. The other police officer who had observed the scene, Atherton explained, was

ice on the road were known to Brooks. *See Sadorus v. Wood*, 230 A.2d 478, 481 (D.C.1967). The parties also dispute whether the transcripts from the first two trials support that Brooks conceded his negligence and whether those transcripts were available for the trial court's consideration of the directed verdict and summary judgment motions. The trial court denied Atherton's motions. We do not consider the trial court's denial of Atherton's motions for directed verdict and summary judgment on the question of Brooks' negligence because they are not appealable. *See Kuder v. United Nat'l Bank*, 497 A.2d 1105, 1108 (D.C.1985) (citing *Whitman v. Noel*, 53 A.2d 280, 281–82 (D.C.1947)).

4. The first trial ended with a jury verdict in April 1989, in favor of Brooks, which the trial court (Judge George W. Mitchell) overturned as being against the weight of the evidence. The second trial, in April 1990, before Judge Harold L. Cushenberry, Jr., ended in a mistrial requiring Atherton to pay over $5,000 in attorneys fees in Rule 11 sanctions as a condition of proceeding. On appeal, we remanded to the trial court to make findings as to what actions constituted Atherton's sanctionable conduct under Rule 11, and as to whether Atherton was able to pay the sanction. *See Atherton v. Brooks*, 612 A.2d 844, 846 (D.C.

1992). If Atherton was unable to pay any sanctions amount, the trial court was to consider whether his conduct warranted *de facto* dismissal or a lesser sanction. *See id.* Upon remand, the trial judge could not remember Atherton's specific acts that resulted in sanctions, so he vacated the sanctions and granted Atherton the third trial from which he now appeals.

5. After hearing argument, on June 16, 1994, Judge Nöel Anketell Kramer denied the motion to continue without prejudice. This appears to have been Judge Kramer's sole participation as motions judge. Atherton renewed his motion the following day.

6. The trial judge stated:
 Mr. Atherton, you've filed two new motions really repeating the same thing in each of these motions that the Court denied before. I tried to explain to you the best way I knew how that the clerk will issue the subpoenas, the clerk and no one in this court can go out and serve subpoenas for you, that is your responsibility, sir, all we can do, because of the in forma pauperis is to make sure you get the subpoenas, you are responsible for getting someone of suitable age and discretion to go out and serve your subpoenas. The motion is denied.

out of the country; Atherton proffered an affidavit from the State Department to that effect.[7]

After denying Atherton's motions, the trial court asked Atherton if he was ready to proceed to trial. Atherton did not respond directly to the court's question, but reiterated his concern with going forward without either the witnesses or the transcripts. The court asked Atherton once again if he was ready, and Atherton, again, requested a continuance. The trial court then *sua sponte* invited a motion to dismiss, which was made instantly by opposing counsel, and granted without further discussion. Atherton immediately requested reconsideration of the dismissal, stating that he was willing to proceed with the trial even without the transcripts and his witnesses if it meant that the case would otherwise be dismissed. The trial court, stating that it had given Atherton many opportunities and he had not been ready, denied his request.[8] In a written

7. Atherton's colloquy with the trial court follows:

 THE COURT: Now, what papers are necessary for you to proceed with trial?

 MR. ATHERTON: Your staff has been very kind to give me some missing pleadings that were taken from my files. The crucial items which I'm missing are the transcripts from trial number one and the transcript of trial number two. There are a total of approximately 400 pages. They were provided to me, at least transcript trial number two, was provided in forma pauperis, free of cost. I had quite a few notes in those transcripts and I don't have them with me. And they're very crucial to—

 THE COURT: How are they crucial, sir?

 MR. ATHERTON: They provide evidence of what did occur before, they would be, you know, I listed them in my exhibits as potential evidence of testimony from people who would not appear. I have not been able to subpoena one of the two police officers whose testimony is—is necessary. I have obtained information that he is out of the country, so his testimony which is in the transcript is necessary.

 THE COURT: Well, that's not necessarily so. I tried to explain this to you during the pretrial that a witness's testimony is not necessarily automatically admitted without a showing of unavailability.

 Now, you say somebody is out of the country, when did that occur? What exercise of due diligence did you go through before you can tell me someone is unavailable. And being out of a country in and to itself doesn't mean a witness is unavailable. If subpoenaed properly, and you just told me you didn't even subpoena witnesses.

 MR. ATHERTON: I've attempted to subpoena the police officer, Your Honor.

 THE COURT: What does that mean? You have attempted to subpoena the police officers.

 MR. ATHERTON: Since I received the notice of the denial of the help from the clerical staff June 9, I've made attempts to subpoena the other police officer who supposedly is available. I've been told by his various supervisors that he has been out all of last week because he was sick. His next scheduled availability would be tonight, he's sup-posed to be on duty for the soccer game. And I—that's the latest information that I have. The only options I have, Your Honor, are either to subpoena him tonight or to attempt to subpoena his administrative supervisor to—to—to establish why he is unavailable for reception purposes.

 I have a notarized document from the Department of State that the other police officer who has—has now been employed by the Department of State is in the security forces is now stationed halfway around the world. He has been in that capacity for the last several years and scheduled to be out of the country for the next year or so. And I have this information from the Department of State and it's notarized.

 These are the two witnesses who were available since Mr. Brooks were the only eyewitnesses in this—to this—to the actual accident, these two witnesses were ones who reported to the scene of the accident within minutes after it happened. And they are able to testify as to the situation—

8. The trial court's colloquy with Atherton preceding dismissal and denial of the reconsideration motion follows:

 THE COURT: Either you're ready, sir, or you're not. If you're not ready then that's the way it is. And there are other people in my courtroom who are ready to go to trial or at least ready to tell me something, and I have other business that I can take care of. Yes, Sir.

 MR. ATHERTON: Your Honor, I have I guess two basic concerns, one is the most crucial with regard to going to trial would be copies of the transcripts which I need in order to properly prepare my interrogation of various witnesses.

 THE COURT: Sir, if your house was ransacked or your files in some way were ransacked last week then it seems to me that since trial is this week that you would have prepared for trial. This week.

 MR. ATHERTON: I did not discover this until this weekend, Your Honor.

 THE COURT: Sir, I mean first of all I'm kind of at a loss to understand why your files would be of any consequence to anybody other than yourself.

order denying Atherton's motion to reconsider the dismissal, the trial court stated:

> Plaintiff's Motion to Reconsider Dismissal is denied, the [plaintiff] having failed to provide the court with sufficient reasons to warrant the relief requested. This court has given Mr. Atherton ample opportunity to get himself ready for trial. This court is neither required by Rule or Law to do more than to provide subpoenas to [plaintiff]. The court is not required to serve the subpoenas. Nor is this court required to pay for expert witnesses, which in any event the utility and materiality of the same are questionable as [plaintiff] was advised during the pretrial. At some point there must be an end to the process.

Atherton appeals from both the dismissal and the denial of his request to set it aside.

## II.

On appeal, Atherton cites two grounds for reversing the trial court's dismissal for lack of prosecution. First, Atherton contends that the reason he was reluctant to proceed to trial, the absence of his witnesses, was caused by the trial court's failure to perform its duty to serve witness subpoenas under Superior Court Civil Rule 54–II. Second, Atherton claims that the trial court's dismissal of his complaint because he was not ready to proceed was an abuse of discretion as he ultimately expressed his willingness to proceed to trial even without his witnesses. We reverse on this second ground and remand the case to the trial court. We leave it to the trial court, should it become necessary on remand, to address in the first instance the scope of Rule 54–II with respect to service of witness subpoenas.

■ We reverse as an abuse of discretion the trial court's denial of Atherton's motion to reconsider dismissal, coupled with his stated intent to proceed with trial forthwith. Although we understand the trial court's wish to avoid trial delay, Atherton's reluctance to proceed also was understandable. He had pointed out to the court the importance of an absent witness, a police officer who had observed the scene immediately after the collision. Atherton also mentioned to the court that in view of the documented unavailability of another police officer witness,[9] he was particularly prejudiced by the loss of his file in the case, which included the transcripts from the two earlier trials during which the police officers had testified. Notwithstanding these obstacles. Atherton unequivocally asserted, in response to the dismissal order,[10] that he would proceed if the only alternative was dismissal. He immediately "respectfully request[ed] that [the trial court] reconsider" the dismissal order. The trial court denied his motion, stating that it had "already acted" and would not give him yet another opportunity to say he was ready to proceed.

■ The decision to dismiss for failure to prosecute is a discretionary call based on a factual question of the litigant's diligence. *See Akinyode v. Hawkins*, 292 A.2d 795, 796 (D.C.1972). When there is no factual issue, "the question [of diligence] becomes one of law." *Id.* As with default judgments, which also result in adjudications not on the merits, we review the decision not to set aside a

> MR. ATHERTON: I am too, Your Honor, I'll admit that, but I cannot deny what I—what I've discovered.
> THE COURT: All right, are you ready to proceed to trial, sir, today, now?
> MR. ATHERTON: Your Honor if it please the Court I would like to have a copy of the transcripts, I would like the opportunity to be able to properly subpoena the witnesses.
> THE COURT: All right. Motion?
> MS. HICKEY: Motion to dismiss, Your Honor.
> THE COURT: Granted.
> MS. HICKEY: Thank you, Your Honor.
> THE COURT: All right.
> MR. ATHERTON: Your Honor, Your Honor—
> THE COURT: Yes, sir.

> MR. ATHERTON: Could I respectfully request that you reconsider. I would prefer to go to trial with what I have than not to go to trial at all.
> THE COURT: Sir, I've already acted, I've given you as many opportunities to speak to me and tell me that you were ready as I intend to give. Mr. Atherton, your case is dismissed.

9. Atherton explained that the police officer was posted "halfway around the world."

10. Atherton was not provided an opportunity to respond to the motion to dismiss before it was granted.

dismissal for lack of prosecution "carefully, even critically" because of the "desirability of assuring the right to be heard on the merits." *Watkins v. Carty's Automotive Elec. Ctr., Inc.,* 632 A.2d 109, 110 (D.C.1993). In the circumstances of this case, the court's refusal to allow Atherton to proceed after he expressed his willingness to do so even without his witnesses was an abuse of discretion. *See id.* (dismissal with prejudice under Rule 41(b) is a drastic measure and should be sparingly exercised); *La Prade v. Lehman,* 490 A.2d 1151, 1155 (D.C.1985) (dismissal with prejudice appropriate only upon "clear evidence of deliberate delay" or "contumacious conduct" and after consideration of wide range of lesser sanctions).[11]

■ Although we do not decide the issue, we consider that Atherton raises a serious issue of first impression about the scope of Rule 54–II. The trial court expressed the view, apparently relying on the practice in Superior Court, that the court has no obligation to serve witness subpoenas for indigent litigants. We believe the matter is not so straightforward. We have recently held in *Herbin v. Hoeffel,* 727 A.2d 883 (D.C.1999), that Rule 54–II [12] requires the trial court to issue and serve a complaint on behalf of litigants proceeding *in forma pauperis. See id.* at 887. Failure to do so, followed by dismissal of the complaint for lack for prosecution, is an abuse of discretion where the plaintiff has otherwise been unable to serve the complaint. *See id.* at 888. This appeal raises a different question, concerning the trial court's responsibility under Super. Ct. Civ. R. 54–II to assist litigants in ensuring attendance of witnesses at trial.

The language of Rule 54–II with respect to witnesses clearly exempts *in forma pauperis* litigants from the usual requirement found in Super. Ct. Civ. R. 45(b)(1), that service of a subpoena must be accompanied, "if the person's attendance is commanded, by tendering to that person the fees for one day's attendance and the mileage allowed by law." Thus, Atherton was entitled to serve subpoenas on his witnesses without prepayment of such fee.

Atherton contends that Rule 54–II also requires the court to serve witness subpoenas. As we noted in *Herbin,* the rule unequivocally provides that the court "shall issue and serve all *process." See* BLACK'S LAW DICTIONARY 1205 (6th ed. 1990) ("Process is defined as any means used by the court to acquire or exercise its jurisdiction over a person or over specific property.... The word 'process,' however, as now commonly understood, refers to a summons, or, summons and complaint, and, less commonly, to a writ."). Rule 54–II does not expressly refer to service of subpoenas. It is arguable, however, that as used in Rule 54–II, "process" also includes a subpoena, which is "a command to appear at a certain time and place to give testimony upon a certain matter." *Id.* at 1426. *See Jackson v. Brinker,* No. IP–91–471–C, 1992 WL 404537, at * 2, 1992 U.S. Dist. Lexis 19619, at * 4 (S.D.Ind. Dec. 21, 1992) ("Subpoena constitute 'process' for the purpose of 28 U.S.C. § 1915(c)"); *DuPont v. Bronston,* 46 A.D.2d 369, 362 N.Y.S.2d 471, 473 (1974) ("A subpoena *ad testificandum* is process."), *overruled in part by AABCO Sheet Metal Co. v. Lincoln Ctr. for the Performing Arts,* 249 A.D.2d 39, 670 N.Y.S.2d 494 (1998); 81 AM. JUR. 2D *Witnesses* § 7 (1992) ("[A] subpoena is the medium for compelling the attendance of a witness, and *it is a process in the name of the court or judge,* carrying with it a command dignified by the sanction of the law.") (emphasis added).

---

11. We do not reach whether it would also have been an abuse of discretion to deny Atherton some time to locate the police officer he represented would be back on duty that evening.

12. Rule 54–II provides:

The Court may waive the prepayment of costs or the payment of costs accruing during any action upon the presentation of an affidavit in the form prescribed in CA Form 106 or other satisfactory evidence, and a finding that the party is unable to pay such costs. When costs are so waived the notation to be made on the records of said action shall be "Prepayment of costs waived," or "Costs waived". The officers of the Court shall issue and serve all process, and perform all duties in such cases. Witnesses shall be subpoenaed without prepayment of witness fees, and the same remedies shall be available as are provided for by law in other cases.

Super. Ct. Civ. R. 54–II.

The Supreme Court has stated, with respect to the federal statute authorizing *in forma pauperis* litigation, 28 U.S.C. § 1915,[13] that

In enacting the federal *in forma pauperis* statute, Congress "intended to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because ... poverty makes it impossible ... to pay or secure the costs" of litigation.

*Denton v. Hernandez,* 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (quoting *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 342, 69 S.Ct. 85, 93 L.Ed. 43 (1948)). The District of Columbia counterpart, D.C.Code § 15–712(a) (1995),[14] as implemented by Rule 54–II, has a similar remedial purpose. We also note that Rule 54–II, unlike 28 U.S.C. § 1915(d), exempts indigent litigants from prepayment of witness fees.

It could be argued that, as indigent litigants are not required to prepay witness fees under Rule 54–II, the trial court is required to serve witness subpoenas.[15] We are cognizant, however, that such an obligation might impose on the trial court an administrative burden not contemplated when Rule 54–II was adopted. Further, even if Rule 54–II were to cover witness subpoenas, there is an issue whether the trial court has discretion to limit the subpoenas that an *in forma pauperis* litigant seeks to have issued and served by the court under Rule 54–II. *See Johnson, supra* note 14, 698 F.2d at 294 (Swygert, J., dissenting); *Williams, supra* note 14, 10 F.3d at at 566–67; *Coleman v. St. Vincent De Paul Soc.,* 144 F.R.D. 92, 96 (E.D.Wis. 1992). In sum, the question bears careful consideration; we prefer to have the trial court's informed view before deciding on the subject.

We reverse the trial court's dismissal of Atherton's case for lack of prosecution and

13. 28 U.S.C. § 1915 provides:

(a) [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor....

(d) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

14. D.C.Code § 15–712(a) provides:

Any District of Columbia court may authorize the commencement, prosecution or defense of any non-criminal suit, action or proceeding, or appeal therein, without prepayment of fees and costs or security therefor, including the fees for transcripts on appeal, by a person who is unable to pay such costs or give security therefor without substantial hardship to himself or herself or his or her family, as established by affidavit or other proof satisfactory to the court.

15. *See Aiello v. McCaughtry,* No. 94–1935, 1996 WL 420456, at * 3, 1996 U.S.App. Lexis 18737, at * 9 (7th Cir. July 25, 1996). Federal courts have stated that but for the requirement that indigents prepay witness fees, 28 U.S.C. § 1915(d) requires the court to subpoena their witnesses. *See McNeil v. Lowney,* 831 F.2d 1368, 1373 (7th Cir.1987); *United States Marshals Serv. v. Means,* 741 F.2d 1053, 1056 (8th Cir.1984) (en banc) ("While the plain language of section 1915

expressly provides for service of process for an indigent's witnesses, it nowhere mentions payment of fees and expenses for such witnesses"); *Tedder v. Odel,* 890 F.2d 210, 211 (9th Cir.1989) ("Although the plain language of section 1915 provides for service of process for an indigent's witnesses, it does not waive payment of fees or expenses for those witnesses."). Some federal courts have suggested that, should the witness fees be paid from whatever source, or be inapplicable, the courts would then be obligated to serve the subpoenas. *See Jackson, supra,* 1992 WL 404537, at * 2, 1992 U.S. Dist. Lexis 19619, at * 4 (noting, in case involving subpoena *duces tecum* which does not require prepayment of witness fees, that cases interpreting § 1915(d) have "uniformly assumed, without discussion" that provision requires Marshals Service to serve subpoenas for indigent plaintiffs); *see also Johnson v. Hubbard,* 698 F.2d 286, 291 (6th Cir.1983) ("It is paradoxical to provide an indigent plaintiff with the right to proceed in court, then deny him a meaningful chance to exercise that right by not providing him assistance in paying routine costs in so exercising that right."). *But see Canady v. Kreider,* 892 F.Supp. 668, 670 (M.D.Pa.1995) ("No statutory authority provides for service by the Marshal Service."). Some federal courts interpreting 28 U.S.C. § 1915(d) have held that the decision to grant or deny subpoenas for indigent parties at the Government's expense is within the discretion of the trial court. *See Williams v. Carter,* 10 F.3d 563, 566 (8th Cir.1993); *Means, supra,* 741 F.2d at 1057; *Lloyd v. McKendree,* 749 F.2d 705, 707 (11th Cir.1985); *McNeil, supra,* 831 F.2d at 1373.

remand the case for proceedings consistent with this opinion.

*Reversed and remanded.*